IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| THOMAS A. ORMAN | : | |
| LESLIE E. ORMAN, | : | |
|       Plaintiffs, | : | |
|       v. | : | |
| CITIMORTGAGE; CORY O'BRYANT; LATANYA M. BRIGHAM; SYBIL SHORT; HELENE E. ROBINSON; GILLIAN HOWARD; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.; SANDRA A. WEST, V.P.; POWERS KIRN & ASSOCIATES; MATTHEW J. O'DONNELL, ESQ.; DANIEL C. FANASELLE, ESQ.; BALLARD SPAHR, LLC; NATHAN CATCHPOLE, ESQ.; MARTIN C. BRYCE, ESQ.; DANIEL JT MCKENNA, ESQ.; LAW OFFICES OF GREGORY JAVARDIAN; SEAN P. MAYS, ESQ., | : | CIVIL ACTION NO. 2:15-CV-03432-JHS |
|       Defendants. | : | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS COMPLAINT**

PAGE

I.   INTRODUCTION .................................................................................... 1

II.  STATEMENT OF FACTS ........................................................................ 2

    A.   Background ....................................................................................... 2

        1.   The Ormans' Previous Federal Court Litigation ....................... 4

        2.   The Ormans' State Court Litigation. ......................................... 5

    B.   Allegations of the Complaint ........................................................... 6

III.  STANDARD OF REVIEW ...................................................................... 8

    A.   Standard on a Motion to Dismiss for Lack of Subject Matter
        Jurisdiction ....................................................................................... 8

    B.   Standard on a Motion to Dismiss for Failure to State a Claim ......... 9

IV.  ARGUMENT ........................................................................................ 10

    A.   The Court Should Decline To Exercise Jurisdiction Over All Of The
        Ormans' Claims Because They Improperly Seek To Collaterally
        Attack CitiMortgage's Right To Proceed In The Parallel Foreclosure
        Action. ............................................................................................ 10

        1.   The Court Should Dismiss the Ormans' Claims under the
            Colorado River Abstention Doctrine. ..................................... 10

        2.   The Anti-Injunction Act Precludes the Court from Granting Any
            Relief That Would Have the Effect of Enjoining the Foreclosure
            Action. ................................................................................... 13

    B.   The Complaint Fails to State a Claim Upon Which Relief Can be
        Granted. .......................................................................................... 15

        1.   The Ormans' Claims Are Barred By Res Judicata and Collateral
            Estoppel. ............................................................................... 15

        2.   In Any Event, The Complaint Fails To Set Forth Any Cause of
            Action As A Matter Of Law. .................................................. 21

    C.   The Complaint Fails to Plead a Cause of Action Under the FDCPA or
        the FCEUA. .................................................................................... 30

    D.   The Complaint Fails to Plead a Cause of Action Under RICO or the
        Pennsylvania Corrupt Organizations Act ....................................... 32

        1.   The Complaint fails to plead the existence of a RICO enterprise. ........... 33

        2.   The Complaint fails to allege a pattern of racketeering activity. ............. 35

E.   The Complaint Fails to Plead a Cause of Action for Negligent and / or Intentional Misrepresentation. ..........................................................36

    1.   Intentional Misrepresentation Claim Fails as a Matter of Law. ...............36

    2.   Negligent Misrepresentation Claim Fails as a Matter of Law..................38

F.   The Complaint Fails to Plead a Cause of Action for Negligent and/or Intentional Infliction of Emotional Distress. ....................................................38

    1.   The Complaint fails to plead a cause of action for negligent infliction of emotion distress......................................................38

    2.   The Complaint fails to plead a cause of action for intentional infliction of emotional distress. .................................................39

G.   The Complaint Fails to Plead a Claim for Conspiracy to Defraud .................40

H.   Claims Against Individual Defendants Should be Dismissed. ........................41

V.   CONCLUSION........................................................................................................ 41

# TABLE OF AUTHORITIES

Page(s)

**FEDERAL CASES**

*Alston v. Parker*,
363 F.3d 229 (3d Cir. 2004) .................................................................................. 18

*Angeloff v. Deardorff*,
No. 1:09-CV-2169, 2010 WL 4853788 (M.D. Pa. Nov. 23, 2010) ........................ 38

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .............................................................................. 9, 31, 41

*Atlantic Coast Line R.R. v. Bd. of Locomotive Eng'rs*,
398 U.S. 281 (1970) .............................................................................................. 14

*BancOklahoma Mortg. Corp. v. Capital Title Co.*,
194 F.3d 1089 (10th Cir. 1999) ............................................................................ 34

*Bast v. Cohen, Dunn & Sinclair, P.C.*,
59 F.3d 492 (4th Cir. 1995) .................................................................................. 34

*Bistrian v. Levi*,
696 F.3d 352 (3d Cir. 2012) .................................................................................... 9

*Blunt v. Lower Merion Sch. Dist.*,
767 F.3d 247 (3d Cir. 2014) .................................................................... 16, 17, 19

*Bonner v. Henderson*,
147 F.3d 457 (5th Cir. 1998) ................................................................................ 33

*Brewer v. Hopple*,
2015 U.S. Dist. LEXIS 78025 (E.D. Pa. May 18, 2015) ...................................... 20

*Brewer v. Hopple*,
No. 1:15-CV-0942, 2015 WL 3754548 (M.D. Pa. June 16, 2015) ........................ 16

*Bridge v. Phoenix Bond & Indem. Co.*,
553 U.S. 639 (2008) .............................................................................................. 35

*Catlin Specialty Ins. Co. v. Plato Constr. Corp.*,
No. 10-cv-5722, 2012 U.S. Dist. LEXIS 36494 (D.N.J. Mar. 19, 2012) .............. 15

*Christidis v. First Pa. Mortgage Trust*,
717 F.2d 96 (3d Cir. 1983) .................................................................................... 37

*Clark v. U.S. Bank Nat. Ass'n*,
No. CIV.A. 03-5452, 2004 WL 1380166 (E.D. Pa. June 18, 2004) ...................... 14

*Colorado River Water Conserv. Dist. v. United States*,
   424 U.S. 800 (1976)...................................................................................2, 10, 11, 12, 41

*Combs v. NCO Financial Systems, Inc.*,
   No. 10-5673, 2011 WL 1288686 (E.D. Pa. Apr. 5, 2011).......................................39

*Corbett v. Morgenstern*,
   934 F. Supp. 680 (E.D. Pa. 1996) ..........................................................................40

*David v. Hudgins*,
   896 F. Supp. 561 (E.D. Va. 1995) ..........................................................................33

*Davis v. Wells Fargo U.S. Bank Nat. Ass'n*,
   No. CIV.A. 14-07014, 2015 WL 3555301 (E.D. Pa. June 8, 2015).......................16

*Derisme v. Hunt Leibert Jacobson P.C.*,
   880 F. Supp. 2d 339 (D. Conn. 2012)....................................................................30

*DiPietro v. Landis Title Co.*,
   No. 11-cv-5110, 2012 U.S. Dist. LEXIS 80291 (D.N.J. June 11, 2012)................12

*Diversified Fin. Sys. v. 1811 Spring Garden Assocs.*,
   1997 U.S. Dist. LEXIS 1892 (E.D. Pa. Feb. 19, 1997) .........................................12

*et. seq.*, *Benner v. Bank of Am., N.A.*,
   917 F. Supp. 2d 338 (E.D. Pa. 2013) .....................................................................30

*Ezekoye v. Ocwen Federal Bank FSB*,
   179 F.App'x 111 (3d Cir. 2006) .............................................................................16

*FDIC v. First Interstate Bank, N.A.*,
   937 F. Supp. 1461 (D. Colo. 1996)........................................................................34

*Gillespie v. Chase Home Fin., LLC*,
   No. 3:09–CV–191–TS, 2009 WL 4061428 (N.D. Ind. Nov. 20, 2009) .................31

*Gonzalez v. Old Kent Mtge. Co.*,
   2000 U.S. Dist. LEXIS 14530, No. Civ. A. 99-5959, 2000 WL 1469313
   (E.D. Pa. Sept. 21, 2000) .......................................................................................38

*Gould Electronics Inc. v. United States*,
   220 F.3d 169 (3d Cir. 2000).....................................................................................8

*Gregory v. Chehi*,
   843 F.2d 111 (3d Cir. 1988).....................................................................................16

*Hanczyc v. Valley Distributing and Storage Co., Inc.*,
    No. 10-2397, 2011 WL 1790093 (M.D. Pa. May 9, 2011)....................................40

*Hussein v. Reality*,
    2013 U.S. Dist. LEXIS 143925, 2013 WL 5530256 (D.N.J. Oct. 3, 2013) ..........................18

*In re Burlington Coat Factory Sec. Litig.*,
    114 F.3d 1410 (3d Cir. 1997).......................................................................2

*In re Glenn W. Turner Enter. Litig.*,
    521 F.2d 775 (3d Cir. 1975).......................................................................14

*Jones v. Lockett*,
    2009 U.S. Dist. LEXIS 129347 (W.D. Pa. June 8, 2009)....................................40

*Katzman v. Victoria's Secret Catalogue*,
    167 F.R.D. 649 (S.D.N.Y. 1996) ...............................................................32

*Kimmel v. Phelan Hallinan & Schmieg, PC*,
    847 F.Supp.2d 753 (E.D.Pa.2012) ...........................................................31

*Lewis v. Smith*,
    2008 U.S. Dist. LEXIS 68332 (M.D. Pa. Aug. 7, 2008) ....................................17

*Lum v. Bank of Am.*,
    361 F.3d 217 (3d Cir. 2004).......................................................................37

*Mabbitt v. Midwestern Audit Serv., Inc.*,
    No. 07–11550, 2008 WL 723507 (E.D. Mich. Mar. 17, 2008) .............................31

*Madera v. Ameriquest Mortg. Co. (In re Madera)*,
    2008 U.S. Dist. LEXIS 11847 (E.D. Pa. Feb. 7, 2008) ....................................14

*McCready v. Jacobsen*,
    No. 06–2443, 2007 WL 1224616 (7th Cir. April 25, 2007) ...................................30

*Miller v. Pocono Ranch Lands Prop. Owners Assoc., Inc.*,
    2012 WL 6803269 (E.D. Pa. Dec. 20, 2012)..............................................35, 36

*Montgomery Cnty., Pa. v. MERSCORP, Inc.*,
    16 F. Supp. 3d 542 (E.D. Pa. 2014) ...........................................................29

*Montgomery Cnty. v. MERSCORP Inc.*,
    2015 U.S. App. LEXIS 13482 (3d Cir. Aug. 3, 2015).........................................29

*Morelli v. Morelli*,
   No. CIV. A. 93-5619, 1994 WL 327640 (E.D. Pa. July 7, 1994)............................35

*Mortensen v. First Fed. Sav. & Loan Ass'n*,
   549 F.2d 884 (3d Cir. 1977)...................................................................................8, 9

*Nationwide Mut. Fire Ins. Co. v. George V. Hamilton, Inc.*,
   571 F.3d 299 (3d Cir. 2009)......................................................................................10

*New Delview Place Assocs. v. Del. Sav. Bank*,
   1992 U.S. Dist. LEXIS 17515, 1992 WL 346281 (E.D. Pa. Nov. 10, 1992) ...................12, 13

*Palmetto State Medical Center, Inc. v. Operation Lifeline*,
   117 F.3d 142 (4th Cir. 1997) ...................................................................................33

*Peloro v. United States*,
   488 F.3d 163 (3d Cir. 2007)......................................................................................20

*Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*,
   998 F.2d 1192 (3d Cir. 1993).....................................................................................3

*Pyke v. Laughing*,
   No. 92-CV-555, 1996 WL 252660 (N.D.N.Y. May 9, 1996).................................35

*Reves v. Ernst & Young*,
   507 U.S. 170 (1993)...................................................................................................34

*Richmond v. Nationwide Cassel, L.P.*,
   52 F.3d 640 (7th Cir.1995) .......................................................................................33

*Ruffolo v. HSBC Bank USA, N.A.*,
   No. 14-cv-638, 2014 U.S. Dist. LEXIS 141514 (D.N.J. Oct. 3, 2014) .......................11, 12, 13

*Sands v. McCormick*,
   502 F.3d 263 (3d Cir. 2007).......................................................................................4

*Santiago v. Warminster Twp.*,
   629 F.3d 121 (3d Cir. 2010).......................................................................................9

*Schnell v. Bank of New York Mellon*,
   828 F. Supp. 2d 798 (E.D. Pa. 2011) ......................................................................40

*Silverstein v. Percudani*,
   422 F. Supp. 2d 468 (M.D. Pa. 2006) ......................................................................41

*Siwulec v. J.M. Adjustment Servs., LLC*,
 465 F. App'x 200 (3d Cir. 2012) ............................................................9

*Smith v. Litton Loan Servicing, LP*,
 2005 U.S. Dist. LEXIS 1815, 2005 WL 289927 (E.D. Pa. Feb. 4, 2005) ........................13, 15

*Smith v. Sch. Dist. of Philadelphia*,
 112 F. Supp. 2d 417 (E.D. Pa. 2000) ......................................................39

*Souders v. Bank of Am.*,
 No. 1:CV-12-1074, 2012 WL 7009007 (M.D. Pa. Dec. 6, 2012) ...........................................31

*St. Clair v. Wertzberger*,
 637 F. Supp. 2d 251 (D.N.J. 2009) ......................................................13

*U.S. Steel Corp. Plan for Empl. Ins. Benefits v. Musisko*,
 885 F.2d 1170 (3d Cir. 1989) ......................................................14

*UFCW Local 1776 v. Eli Lilly & Co.*,
 620 F.3d 121 (2d Cir. 2010) ......................................................35

*United States ex rel. Atkinson v. Pa. Shipbuilding Co.*,
 473 F.3d 506 (3d Cir. 2007) ......................................................8

*United States v. Irizarry*,
 341 F.3d 273 (3d Cir. 2003) ......................................................33

*United States v. Porcelli*,
 865 F.2d 1352 (2d Cir.), *cert. denied*, 493 U.S. 810 (1989) ....................................32

*United States v. Turkette*,
 452 U.S. 576 (1981) ......................................................33

OTHER CASES

*Acad. Indus. v. PNC Bank, N.A.*,
 2002 Phila. Ct. Com. Pl. LEXIS 94 (Pa. C.P. May 20, 2002) ................................38

*BAC Home Loans Servicing, L.P. v. Viola*,
 2014 Phila. Ct. Com. Pl. LEXIS 9 (Pa. C.P. Jan. 28, 2014) ...........................22, 26

*Bank of Am., N.A. v. Hallowich*,
 34 Pa. D. & C.5th 276 (Pa. County Ct. 2013) ......................................................27

*Bloom v. DuBois Regional Medical Center*,
 409 Pa. Super. 83 (Pa. 1991) ......................................................38

*Bortz v. Noon*,
   729 A.2d 555 (Pa. 1999) ...................................................................37

*GMAC Mortg. v. Smith*,
   2012 Phila. Ct. Com. Pl. LEXIS 278 (Pa. C.P. Aug. 24, 2012).......................................22, 28

*Hoy v. Angelone*,
   720 A.2d 745 (Pa. 1998) ...................................................................39

*Ira G. Steffy & Son, Inc. v. Citizens Bank of Pa.*,
   7 A.3d 278 (Pa. Super. Ct. 2010) ...........................................................25

*JPMorgan Chase v. Murray*,
   63 A.3d 1258 (Pa. Super. Ct. 2013) .....................................................23, 27

*Marjer, Inc. v. Ligus*,
   2013 Pa. Dist & Cnty. Dec. LEXIS 280 (Pa. C.P. Apr. 5, 2013) ...........................................28

*Mortgage Elec. Registration Sys. v. Ralich*,
   982 A.2d 77 (Pa. Super. 2009)...........................................................22, 28

*Nationstar Mortg. LLC v. Lark*,
   2012 Phila. Ct. Com. Pl. LEXIS 138 (Pa. C.P. May 16, 2012) ..............................................23

*PHH Mortg. Corp. v. Powell*,
   100 A.3d 611 (Pa. Super. Ct. 2014)...................................................22, 24

*Shuster v. Pa. Turnpike Comm'n*,
   149 A.2d 447 (Pa. 1953)...................................................................25

*U.S. Bank v. Mallory*,
   982 A.2d 986 (Pa. Super. Ct. 2009)...................................................22, 27

*Wells Fargo Bank, NA v. Norton*,
   2012 Phila. Ct. Com. Pl. LEXIS 398 (Pa. C.P. Nov. 26, 2012)............................................24

*William Penn Parking Garage, Inc., et al., v. Pittsburgh*,
   346 A.2d 269 (Pa. 1975) ...................................................................26

**FEDERAL STATUTES**

18 U.S.C. § 371.................................................................................40

18 U.S.C. § 1961(1) & (5) ....................................................................35

28 U.S.C. § 2283.................................................................................14

15 U.S.C. § 1962, *et seq.*,..................................................................7, 30, 31, 32

15 U.S.C. § 1692c...............................................................................30, 31, 32

15 U.S.C. § 1692e....................................................................................30, 32

18 U.S.C. §§ 1961-1968 ......................................................7, 32, 33, 34, 35, 36

**OTHER STATUTES**

13 Pa.C.S. § 3201(a) .................................................................................23, 27

13 Pa.C.S. § 3205(a) .......................................................................................23

13 Pa.C.S. § 3205(b) .......................................................................................23

13 Pa.C.S. § 3301 ...........................................................................................23

18 Pa. C.S. § 903 ............................................................................................40

Pennsylvania Uniform Commercial Code ("PUCC").......................................23

**RULES**

Fed. R. Civ. P. 8(a) ...........................................................................................9

Fed. R. of Civ. P. 9(b)....................................................................................37

Fed. R. Civ. P. 12(b)(1).........................................................................1, 2, 8, 41

Fed. R. Civ. P. 12(b)(6).......................................................1, 4, 9, 10, 16, 21, 41

Fed. R. Civ. P. 19 ........................................................................................17, 18

Pa. R. Civ. P. 1147 ..........................................................................................22

Pa. R. Civ. P. 1147(a)(1).................................................................................22

**OTHER AUTHORITIES**

Black's Law Dictionary (9th ed. 2009).............................................................21

Defendants, CitiMortgage, Inc., Cory O'Bryant, LaTanya M. Brigham, Sybil Short, Helene E. Robinson, Gillian Howard, Mortgage Electronic Registration Systems, Inc., and Sandra A. West (the "Defendants"), by and through their undersigned Counsel, hereby move to dismiss the Complaint filed by Plaintiffs Thomas A. Orman and Leslie E. Orman (the "Ormans") with prejudice, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

I.      **INTRODUCTION**

This action is the latest of several frivolous lawsuits commenced by the Ormans in their misguided attempt to void a valid mortgage lien held by CitiMortgage, Inc. ("CitiMortgage"). The Ormans concede that they received a loan in 2007, and that they agreed to secure the repayment of the loan with a mortgage against their property. They also admit that they defaulted under the terms of the mortgage by failing to make any payments since the installment due November 2010. However, through a series of baseless lawsuits and frivolous pleadings, the Ormans have managed to forestall enforcement of the mortgage for nearly five years, all while failing to make a single mortgage payment. The claims they raise in this action were previously dismissed with prejudice by this Court, and by the Court of Common Pleas of Chester County, Pennsylvania.

In January 2015, CitiMortgage commenced a foreclosure action by filing a complaint in mortgage foreclosure in the Court of Common Pleas of Chester County, Pennsylvania. In response, the Ormans commenced this action in which they raise virtually the same allegations previously rejected by this Court, in an attempt to collaterally attack the pending foreclosure action. The Ormans seek a declaration that the

mortgage is void, and also purport to raise various causes of action against CitiMortgage and the parties that have acted on its behalf. It is clear that the Complaint has been filed in bad faith, with the sole purpose of challenging the pending foreclosure action, and harassing all parties that have opposed the Ormans' meritless claims. Thus, the Court should decline to exercise jurisdiction, and should dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(1), under the *Colorado River* Abstention Doctrine and the Anti-Injunction Act. Furthermore, even if the Court were to exercise jurisdiction, the Ormans' allegations fail as a matter of law because all of the claims are barred by *res judicata* and collateral estoppel. Moreover, the Ormans' attempt to challenge CitiMortgage's right to enforce the Mortgage are entirely without merit, as CitiMortgage has conclusively established its right to do so. In any event, each claim independently fails as a matter of law. For the reasons discussed herein, the Court should dismiss the complaint in its entirety and with prejudice.

## II. STATEMENT OF FACTS[1]

### A. Background

On May 31, 2007 the Ormans received a loan in the amount of $140,000.00 (the "Loan"), the indebtedness of which was evidenced by a promissory note, which was executed by the Ormans on May 31, 2007, and was payable to MortgageIT, Inc. in monthly installments with an interest rate of 6.000% (the "Note").[2] Payment of the Note

---

[1] For purposes of this Motion only, Defendants accept the facts alleged in the Complaint as true.

[2] A true and correct copy of the Note is attached hereto as Exhibit 'A'. The Court may consider the Note because it is integral to the Ormans' claims, and is relied upon throughout their Complaint. *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) ("a document integral to or explicitly relied upon in the

was secured by a mortgage, which was executed by the Ormans on May 31, 2007, and recorded on June 12, 2007 in the Office of the Recorder of Deeds in Chester County in Book 7183, Page 1957, Instrument #10761740 (the "Mortgage").[3]  Under the terms of the Mortgage, the Ormans agreed to "mortgage, grant and convey to [Mortgage Electronic Registration Systems, Inc. ("MERS")] (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS the [Property]."  *See* Mortgage, Exhibit 'B' at p. 4.  The Ormans also agreed to "pay when due the principal of, and interest on the debt evidenced by the Note . . . ," and that failure to do so would be a default under the Note and Mortgage.  *See* Mortgage, Exhibit 'B' at ¶¶ 1, 22; Note, Exhibit 'A' ¶ 7(b).  Further, the Ormans agreed that "[t]he Note or a partial interest in the Note (together with [the Mortgage]) can be sold one or more times without prior notice to [them]."  *See* Mortgage, Exhibit 'B' at ¶ 20.

The Mortgage was subsequently transferred to CitiMortgage, which was evidenced by an assignment of mortgage recorded October 9, 2012 in the Office of the Recorder of Deeds in Chester County in Book 8533, Page 858, Instrument #112156748 (the "Assignment").[4]

---

complaint" may be considered without converting the motion to dismiss into one for summary judgment.") (internal citations omitted).

[3] A true and correct copy of the Mortgage is attached hereto as Exhibit 'B'.  The Court may consider the Mortgage because, like the Note, it is integral to the Ormans' claims, *see supra* n. 2, and also because it is a public record, recorded in the Office of the Recorder of Deeds for Chester County, and as such, there can be no dispute as to its authenticity.  *See Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) ("a court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss").

[4] A true and correct copy of the Assignment is attached hereto as Exhibit 'C'.  The Court may consider the Assignment in ruling on the instant motion as it is a publicly recorded document.  *See supra* note 3.

The Ormans defaulted under the terms of the Note and Mortgage by failing to make the payments due December 1, 2010 and each month thereafter. *See* Foreclosure Complaint, Exhibit 'D' at Exhibit 'D'.[5]

### 1.    The Ormans' Previous Federal Court Litigation

Shortly after default, on or about January 7, 2011, the Ormans filed a Complaint against CitiMortgage and other parties in the United States District Court for the Eastern District of Pennsylvania, claiming, *inter alia*, their entitlement to rescission under the Truth-in-Lending Act ("TILA"), and violations of the Real Estate Settlement Procedures Act ("RESPA"). *See Orman v. MortgageIt, et al.*, no. 2:11-cv-00139-JHS (E.D. Pa. filed Jan. 7, 2011) (hereinafter "*Orman I*").[6]

In *Orman* I, CitiMortgage filed a Motion to Dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6), and, tellingly, in response thereto, the Ormans voluntarily dismissed their complaint on May 16, 2011. *See Orman I* Docket Report, Exhibit 'E' at Doc. No. 41. Immediately after dismissing *Orman I*, the Ormans filed a second lawsuit in this Court against CitiMortgage, raising the same claims under TILA and RESPA, and also raising claims for quiet title, fraud, and breach of contract. *See Orman v. CitiMortgage, et al.*, No. 2:11-cv-03196-JHS (E.D. Pa. filed May 16, 2011) (hereinafter

---

[5] A true and correct copy of the Foreclosure Complaint filed in the Court of Common Pleas of Chester County is attached hereto, and incorporated herein as Exhibit 'D'. The Court may consider the foreclosure proceedings and the pleadings filed therein because it is a matter of public record. *See Sands v. McCormick*, 502 F.3d 263, 268 (3d Cir. 2007) (noting that when ruling on a motion to dismiss, the court may rely on matters of public record, which include judicial proceedings and the opinions of other courts).

[6] A true and correct copy of the docket report for *Orman I* is attached hereto, and incorporated herein as Exhibit 'E'. *See supra* note 5.

"*Orman II*").[7]   The claims in Orman II were premised on the Ormans' contentions that the Mortgage was void due to: (1) their alleged rescission under TILA; (2) MERS' role in the Mortgage transaction; and (3) alleged unrecorded assignments of mortgage.   *See* Exhibit 'G'.

CitiMortgage filed a Motion to Dismiss on June 28, 2011. *See Orman II* Docket Report, Exhibit 'F' at Doc. No. 5.   Following argument, on March 30, 2012, the Honorable Joel H. Slomsky entered an Order and Opinion granting CitiMortgage's Motion to Dismiss and dismissing that action with prejudice.[8]

## 2.     The Ormans' State Court Litigation.

On March 30, 2012 the Ormans filed a *lis pendens* and quiet title complaint in the Court of Common Pleas of Chester County, Pennsylvania against MortgageIT and MERS (hereinafter the "Quiet Title Action").   *See Orman v. MortgageIt, et al.*, No. 2012-04352-RC (Ct. Com. Pl. Chester Cnty., filed March 30, 2012).[9]   On October 12, 2012, CitiMortgage was substituted in the Quiet Title Action by its attorney Sean Mays, and on the same date CitiMortgage filed an Answer and New Matter to the Quiet Title Complaint.   *See* Quiet Title Action Docket Report, Exhibit 'H'.   On November 1, 2012 the Ormans filed a Motion for Summary Judgment, and on November 3, 2012 CitiMortgage filed a Response in Opposition, with a Cross-Motion for Summary Judgment.   *See id.*

---

[7] A true and correct copy of the docket report for *Orman II* is attached hereto, and incorporated herein as Exhibit 'F'.   *See supra* note 5.

[8] True and correct copies of the Order and Opinion are attached hereto, and incorporated herein as Exhibit 'G'.   *See supra* note 5.

[9] A true and correct copy of the docket report for the Quiet Title Action is attached hereto, and incorporated herein as Exhibit 'H'.   *See supra* note 1.

On June 14, 2014, the Honorable Jeffrey R. Sommer entered an Order and Opinion granting CitiMortgage's Cross-Motion for Summary Judgment, thereby dismissing the Quiet Title Action with prejudice. *See id.* On July 11, 2014, the Ormans filed a Notice of Appeal of the order dismissing the Quiet Title Action. On June 2, 2015, the Superior Court entered an Order vacating judgment and remanding the case, holding that the Quiet Title Action should have been dismissed because Thomas A. Orman, a necessary party to the Action, had not been joined.[10] In accordance therewith, the Honorable Jeffrey R. Sommer entered an Order dismissing the Quiet Title Action on July 14, 2015. *See id.*

On January 26, 2015 CitiMortgage filed a complaint in mortgage foreclosure (the "Foreclosure Complaint").[11] On February 9, 2015, the Ormans responded to the Foreclosure Complaint by filing preliminary objections, claiming, *inter alia*, that CitiMortgage lacks standing to foreclose and that the Mortgage was void due to the Ormans' rescission of the Loan. *See* Foreclosure Action Docket Report, Exhibit 'J'. On February 18, 2015 CitiMortgage filed a reply to the Ormans' preliminary objections, and on June 9, 2015, the Court entered an order overruling the preliminary objections. *See id.*

### B.    Allegations of the Complaint

On June 18, 2015, the Ormans initiated the instant action by filing a complaint Complaint") against CitiMortgage, MERS, three different law firms, and 12 individual defendants. The Ormans' claims are based on two principle allegations, both of which were rejected by this Court in *Orman II*: (1) that the Assignment is somehow forged or

---

[10] A true and correct copy of the Superior Court's order is attached hereto, and incorporated herein as Exhibit 'I'. *See supra* note 5.

[11] A true and correct copy of the docket report for the Foreclosure Action is attached hereto, and incorporated herein as Exhibit 'J'. *See supra* note 5.

fraudulent, *see* Complaint at ¶¶ 24-25, 42; and (2) that the election of MERS as nominee under the Mortgage is fraudulent, which renders the Mortgage void. *See* Complaint at ¶¶ 69-71, 78-84. Based on these allegations, the Ormans allege that Defendants are liable for conduct related to the execution of the Mortgage and Assignment, the defense of their Quiet Title Action, and for proceeding with foreclosure. Based thereon, they purport to raise seven causes of action against CitiMortgage, MERS, and several of their employees for:

1.    Violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq*. ("First Count");

2.    Violations of the Pennsylvania Fair Credit Extension Uniformity Act, 73 Pa. CS A § 2270.4[12] ("FCEUA") ("Second Count");

3.    Violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961-1968, *see* Complaint at ¶¶ 62-99, ("Third Count");

4.    Violations of Pennsylvania Corrupt Organizations Act , 18 Pa. C.S.A. § 911, *see* Complaint at ¶¶ 100-132 ("Fourth Count");

5.    Negligent and/or intentional misrepresentation, *see* Complaint at ¶¶ 155-168, ("Sixth Count");

6.    Negligent and/or intentional infliction of emotional distress, *see* Complaint at ¶¶ 169-186, ("Seventh Count"); and

7.    Conspiracy to defraud, *see* Complaint at ¶¶ 187-197 ("Eight Count")

All of the claims are based on the same principal allegations, and each claim merely repeats the Ormans' erroneous conclusions of law related to the Assignment and/or MERS. The Complaint is devoid of legal or factual support, and it does not contain any factual allegations whatsoever related to the individual employee defendants.

---

[12] Erroneously referred to by the Ormans as the "PFDCPA". *See* Complaint at ¶ 57.

Based on their allegations, the Ormans seek declaratory judgment, injunctive relief, equitable relief, cancellation and voidance of the Mortgage, dismissal of the parallel foreclosure action, judgment quieting title, as well as damages in the form of special damages, compensatory damages, punitive damages, treble damages, costs and attorney's fees. *See* Complaint at pp. 44-45.

## III. STANDARD OF REVIEW

### A. Standard on a Motion to Dismiss for Lack of Subject Matter Jurisdiction

Pursuant to Federal Rule of Civil Procedure 12(b)(1), a complaint may be dismissed for lack of subject matter jurisdiction. Generally, where a defendant moves to dismiss under Federal Rule 12(b)(1), the plaintiff bears the burden of proving by a preponderance of the evidence that the Court has subject matter jurisdiction. *See Gould Electronics Inc. v. United States*, 220 F.3d 169, 178 (3d Cir. 2000).

A district court may treat a party's motion to dismiss for lack of subject matter jurisdiction under Federal Rule 12(b)(1) as either a facial or factual challenge to the court's jurisdiction. *Id.* at 176. "In reviewing a facial attack, the court must only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff." *Id.* "In reviewing a factual attack, the court may consider evidence outside the pleadings." *Id.*; *see also United States ex rel. Atkinson v. Pa. Shipbuilding Co.*, 473 F.3d 506, 514 (3d Cir. 2007). A district court has "substantial authority" to "weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). "[N]o presumptive truthfulness attaches to plaintiff's allegations, and the

existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Id.*

### B.    Standard on a Motion to Dismiss for Failure to State a Claim

A motion to dismiss filed under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the complaint against the pleading requirements of Federal Rule of Civil Procedure 8(a). *Siwulec v. J.M. Adjustment Servs., LLC*, 465 F. App'x 200, 202 (3d Cir. 2012). Rule 8(a) requires a complaint to contain a "short and plain statement of the claim showing that the pleader is entitled to relief." As the Supreme Court explained in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), this requirement:

> demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement.

*Id.* at 687 (internal citations and quotations omitted).

To satisfy the requirements of Rule 8, a complaint must allege "sufficient factual matter, accepted as true, 'to state a claim for relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim lacks plausibility where the plaintiff alleges only the "sheer possibility" of misconduct. *Id.*

In determining whether the plausibility requirement is satisfied, courts engage in a three-step analysis: (1) the court must "outline the elements a plaintiff must plead to . . . state a claim for relief"; (2) the court must identify "those allegations that are no more than conclusions and thus not entitled to the assumption of truth"; and (3) "where there are well-pleaded factual allegations, [the court] should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012); *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d

Cir. 2010).  A complaint that fails to satisfy these requirements must be dismissed for failure to state a claim.  Fed. R. Civ. P. 12(b)(6).

## IV.  ARGUMENT

### A.  The Court Should Decline To Exercise Jurisdiction Over All Of The Ormans' Claims Because They Improperly Seek To Collaterally Attack CitiMortgage's Right To Proceed In The Parallel Foreclosure Action.

#### 1.  The Court Should Dismiss the Ormans' Claims under the *Colorado River* Abstention Doctrine.

The Court should dismiss the Ormans' claims in their entirety based on the *Colorado River* abstention doctrine.[13]  This doctrine "allows a federal court to abstain, either by staying or dismissing a pending federal action, when there is a parallel ongoing state court proceeding."  *Nationwide Mut. Fire Ins. Co. v. George V. Hamilton, Inc.*, 571 F.3d 299, 307 (3d Cir. 2009).

The threshold issue to be considered in evaluating a *Colorado River* abstention case is "whether there is a parallel state proceeding that raises 'substantially identical claims [and] nearly identical allegations and issues.'"  *Id.* (quoting *Yang v. Tsui*, 416 F.3d 199, 204 n.5 (3d Cir. 2005)).  Courts weigh the following six factors in determining whether abstention is appropriate:  (1) which court first assumed jurisdiction over the property; (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which jurisdiction was obtained; (5) whether federal or state law controls; and (6) whether the state court will adequately protect the interests of the parties.  *Id.* at 308.

---

[13] *See Colorado River Water Conserv. Dist. v. United States*, 424 U.S. 800 (1976).

District courts in the Third Circuit routinely apply the *Colorado River* doctrine and abstained from exercising jurisdiction where, as here, the federal litigation would duplicate and/or interfere with ongoing state court foreclosure proceedings. In *Ruffolo v. HSBC Bank USA, N.A.*, No. 14-cv-638, 2014 U.S. Dist. LEXIS 141514 (D.N.J. Oct. 3, 2014), the plaintiffs filed a federal lawsuit alleging that the defendant-lender lacked standing to pursue a parallel state court foreclosure action. *Id.* at *6. The District Court found that the federal case and state foreclosure action were parallel because they involved essentially the same parties (the borrower and the lender, as well as the lender's attorneys) and raised substantially identical issues (the lender's standing to foreclose). *Id.* at *10. The District Court ultimately held that the six-factor test weighed in favor of abstention and dismissed the case:

> First, the state court initially obtained jurisdiction and has been overseeing the litigation of the Foreclosure Action for more than three years, and the state also has jurisdiction over the *res*, Plaintiffs' home, which is located in New Jersey. Second, Plaintiffs' Complaint requests a declaration or injunction that would nullify or possibly contradict any ruling of the state court as to whether the transfer of title was proper. Any relief that could be granted by this Court would directly impact New Jersey's interest in protecting the authority of its judicial system.
>
> ***
>
> Third, Plaintiffs' claims and defenses are primarily based on state law, except for Plaintiffs' FDCPA claim, which is based on federal law. While the presence of federal-law issues must always be a major consideration weighing against surrender, the state court is an adequate forum to review Plaintiffs' federal claims. Fourth, the state court is capable of protecting the interests of Plaintiffs in this litigation, and Plaintiffs' rights and claims may still be vindicated in the Foreclosure Action or through the state appellate process. Lastly, this Foreclosure Action has been ongoing for over three years in the county where the Property and Plaintiffs are located. Although not as

> inconvenient as the federal forum in *Colorado River*, this Court is located a significant distance away from the Property and the Foreclosure Action and would cause all parties several hours in travel time to litigate a "parallel" action in this forum.

*Id.* at *11-*12 (internal citations and quotations omitted); *accord New Delview Place Assocs. v. Del. Sav. Bank,* 1992 U.S. Dist. LEXIS 17515, *15-16, 1992 WL 346281 (E.D. Pa. Nov. 10, 1992) (dismissing borrower's complaint for declaratory judgment where borrower sought to use the federal court to defeat a pending mortgage foreclosure proceeding that was earlier filed in state court, finding that "[n]o matter how [borrower] attempts to define its [] cause of action, the central issue is the mortgage foreclosure […] the issues as to whether [the mortgagee] may proceed successfully with the mortgage foreclosure should be decided in the pending mortgage foreclosure action"); *Diversified Fin. Sys. v. 1811 Spring Garden Assocs.,* 1997 U.S. Dist. LEXIS 1892, *6 (E.D. Pa. Feb. 19, 1997) (dismissing action under the *Colorado River* Abstention Doctrine where plaintiff filed a duplicate federal action in an effort to "circumvent the intent of the Pennsylvania legislature", to achieve in federal court that which he could not in the foreclosure proceedings); *DiPietro v. Landis Title Co.*, No. 11-cv-5110, 2012 U.S. Dist. LEXIS 80291, at *13-*14 (D.N.J. June 11, 2012) (applying *Colorado River* abstention because parallel federal litigation and state foreclosure case "implicate important state interests," and state proceedings afforded borrower an adequate opportunity to raise his claims).

The same result should follow here. This lawsuit is parallel to the Foreclosure Action; it involves the same principal parties and substantially the same issues, namely CitiMortgage's right to foreclose. An analysis of the six-factor test weighs heavily in favor of abstention. The Court of Common Pleas has had jurisdiction over the parties'

dispute since January 26, 2015, as well as jurisdiction over the *res*, namely the Property. The Foreclosure Action implicates significant state interests. *See, e.g., Smith v. Litton Loan Servicing, LP*, 2005 U.S. Dist. LEXIS 1815, *22, 2005 WL 289927 (E.D. Pa. Feb. 4, 2005) ("the Commonwealth has an important interest in resolving ejectment and foreclosure disputes"). Further, as in *Ruffolo*, the Ormans seek declaratory and injunctive relief that could nullify or otherwise undermine any final judgment ultimately issued in the Foreclosure Action. At the very least, the Court's assertion of jurisdiction in this case could "throw into turmoil the parties' rights and obligations over plaintiff's home and mortgage, as well as the comity between courts." *St. Clair v. Wertzberger*, 637 F. Supp. 2d 251, 255 (D.N.J. 2009). Finally, the Ormans' rights are more than adequately protected in the Foreclosure Action, which is the proper forum in which to challenge CitiMortgage's right to foreclose. *New Delview Place Assocs,* 1992 U.S. Dist. LEXIS 17515 at *15-16. In fact, the Ormans have already litigated the same claims in the Foreclosure Action, as they filed preliminary objections to the Foreclosure Complaint raising the affirmative claims they raise in this action. *See* Foreclosure Docket, Exhibit 'J'. Furthermore, after their preliminary objections were overruled, the Ormans filed an answer to the Foreclosure Complaint, raising the same claims as affirmative defenses and counterclaims. *See id.* Thus, permitting this action to proceed would unavoidably result in conflict, as the Complaint raises the same claims that are currently being litigated in the Foreclosure Action. Accordingly, the Court should abstain from exercising jurisdiction over all of the Ormans' claims.

    **2.**     **The Anti-Injunction Act Precludes the Court from Granting Any Relief That Would Have the Effect of Enjoining the Foreclosure Action.**

The Ormans' claims, which seek to enjoin CitiMortgage from enforcing the Mortgage, also run afoul of the Anti-Injunction Act, 28 U.S.C. § 2283, which prohibits a federal court from enjoining a state action. *See In re Glenn W. Turner Enter. Litig.*, 521 F.2d 775, 779 (3d Cir. 1975) (noting that the Anti-Injunction Act "is an absolute prohibition against enjoining state court proceedings…."). The Ant-Injunction Act bars injunctive and declaratory relief, *U.S. Steel Corp. Plan for Empl. Ins. Benefits v. Musisko*, 885 F.2d 1170, 1175 (3d Cir. 1989), unless the relief falls within one of the three specified exceptions: (1) the relief is expressly authorized by an act of Congress; (2) the relief is necessary in aid of the federal court's jurisdiction; or (3) the relief is necessary to protect or effectuate the federal court's judgments. 28 U.S.C. § 2283. Indeed, "any doubts as to the propriety of a federal injunction against state court proceedings should be resolved in favor of permitting the state court to proceed in an orderly fashion to finally determine the controversy." *Atlantic Coast Line R.R. v. Bd. of Locomotive Eng'rs,* 398 U.S. 281, 297(1970). The Foreclosure Action does not fall within one of the enumerated exceptions and, therefore, the Ormans' Complaint must be dismissed as violative of the Anti-Injunction Act.

Courts within this district have held that claims seeking to halt state court foreclosure proceedings and sheriff's sales are barred by the Anti-Injunction Act. *See Clark v. U.S. Bank Nat. Ass'n*, No. CIV.A. 03-5452, 2004 WL 1380166, at *3 (E.D. Pa. June 18, 2004) (holding that the Anti-Injunction Act does not allow federal courts to enjoin state court mortgage foreclosure actions); *Madera v. Ameriquest Mortg. Co. (In re Madera)*, 2008 U.S. Dist. LEXIS 11847, *23 (E.D. Pa. Feb. 7, 2008) ("Courts within the Eastern District of Pennsylvania have declined to enjoin state court proceedings

involving foreclosures and sheriff's sales involving both real property and personalty pursuant to the Anti-Injunction Act.") (collecting cases); *Smith v. Litton Loan Servicing, LP*, 2005 U.S. Dist. LEXIS 1815, *28, 2005 WL 289927 (E.D. Pa. Feb. 4, 2005) (holding that court lacks jurisdiction to enjoin state foreclosure action); *see also Catlin Specialty Ins. Co. v. Plato Constr. Corp.*, No. 10-cv-5722, 2012 U.S. Dist. LEXIS 36494, at *11-*12 (D.N.J. Mar. 19, 2012) ("[W]hen a state lawsuit is pending, more often than not, issuing a declaratory judgment will be tantamount to issuing an injunction - providing the declaratory plaintiff an end run around the requirements of the Anti-Injunction Act") (citations omitted).

In this case, the Ormans seek several forms of relief, including injunctive relief, cancellation and voidance of the Mortgage, dismissal of the Foreclosure Action, and judgment quieting title. If granted, the requested relief would necessarily enjoin further proceeding in the Foreclosure Action. The Anti-Injunction Act precludes the Court from granting such relief. Therefore, all claims should be dismissed for lack of jurisdiction.

**B.      The Complaint Fails to State a Claim Upon Which Relief Can be Granted.**

In addition to the foregoing, each cause of action asserted by the Ormans fails to state a viable claim for relief. This presents an additional and independent basis for dismissal of the Complaint.

**1.      The Ormans' Claims Are Barred By *Res Judicata* and Collateral Estoppel.**

Although the Ormans' claims are meritless, as discussed further below, they are precluded from alleging any of the claims raised in the Complaint under the doctrines of *res judicata* and collateral estoppel. The Court may properly consider whether the claims are barred by *res judicata* or collateral estoppel in ruling on a motion to dismiss under

Fed. R. Civ. Pro. 12(b)(6). *See Davis v. Wells Fargo U.S. Bank Nat. Ass'n*, No. CIV.A. 14-07014, 2015 WL 3555301, at *5 (E.D. Pa. June 8, 2015) (citing *Rycoline Prods., Inc. v. C & W Unlimited*, 109 F.3d 883, 886 (3d Cir. 1997). These issues can be raised by motion, or can be raised by the court *sua sponte*. *See Brewer v. Hopple*, No. 1:15-CV-0942, 2015 WL 3754548, at *5 (M.D. Pa. June 16, 2015) ("court can invoke *res judicata* "if it is so plain from the language of the complaint and other documents in the district court's files that it renders the suit frivolous.") (citing *Gleash v. Yuswak*, 308 F.3d 758, 760 (7th Cir. 2002); *Ezekoye v. Ocwen Federal Bank FSB*, 179 F.App'x 111, 114 (3d Cir. 2006). When *res judicata* or collateral estoppel are raised in a 12(b)(6) motion, the court can take judicial notice of the record from a previous proceeding between the parties, as well as any other facts necessary for the analysis. *Id.* (citing *Toscano v. Conn. Gen. Life Ins. Co.*, 288 F. App'x 36, 38 (3d Cir. 2008).

*Res judicata* and collateral estoppel are related principles that share the common goals of judicial economy, predictability and freedom from harassment. *Gregory v. Chehi*, 843 F.2d 111, 116 (3d Cir. 1988). The purpose of *res judicata* or "claim preclusion" "is to avoid piecemeal litigation of claims arising from the same events." *Davis v. Wells Fargo U.S. Bank Nat. Ass'n*, No. CIV.A. 14-07014, 2015 WL 3555301, at *5 (E.D. Pa. June 8, 2015) (citing *Churchill v. Star Enters.*, 183 F.3d 184, 194 (3d Cir. 1999)). It is applied to bar a subsequent suit where there was a final judgment on the merits in a prior suit involving the same parties or their privies and based on the same cause of action. *See Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 276 (3d Cir. 2014). Collateral estoppel, or issue preclusion, is applied to bar a party from relitigating an issue that has already been actually litigated. *Gregory v. Chehi*, 843 F.2d 111, 116 (3d Cir.

1988).  Here, the Ormans' claims are bared in their entirety under *res judicata* and collateral estoppel, as all of the Ormans' claims were either actually raised, or could have been raised in *Orman II*, and as the issues regarding the Assignment and MERS were actually litigated and decided in CitiMortgage's favor in *Orman II*.

### a.    The Ormans' Claims are barred by *res judicata.*

As noted above, the Complaint purports to raise seven causes of action, all rooted in the Ormans' allegation that CitiMortgage does not have the right to enforce the Mortgage.  However, the Ormans are barred from raising any of their claims under the doctrine of *res judicata*, as these claims were already litigated and decided, or could have been raised in *Orman II*.  *Res judicata* gives preclusive effect to a prior judgment if three elements are met: (1) a final judgment on the merits in the prior suit involving; (2) the same parties or their privies; and (3) the prior suit was based on the same causes of action, or could have asserted the same causes of action.  *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 276 (3d Cir. 2014) (citing *Bd. of Trs. of Trucking Emps. of N. Jersey Welfare Fund, Inc.—Pension Fund v. Centra*, 983 F.2d 495, 504 (3d Cir. 1992); *United States v. Athlone Indus., Inc.*, 746 F.2d 977, 983 (3d Cir. 1984)).

Here, the Order granting CitiMortgage's Motion to Dismiss in *Orman II* clearly bars all of the claims raised in the Complaint under *res judicata*.  First, the Order granting CitiMortgage's 12(b)(6) motion is clearly a final judgment on the merits for purposes of *res judicata*.  *See Lewis v. Smith*, 2008 U.S. Dist. LEXIS 68332, *7 (M.D. Pa. Aug. 7, 2008) ("dismissal for failure to state a claim is a final judgment on the merits for *res judicata* purposes.") (internal formatting omitted)  (citing *Lubrizol Corp. v. Exxon Corp.*, 929 F.2d 960, 963 (3d Cir. 1991)).  Moreover, any dismissal, except one for lack of jurisdiction, improper venue, or failure to join a party under Rule 19, operates as an

adjudication on the merits, unless the dismissal states otherwise. *Id.* (citing Fed. R. Civ. P. 41(b); *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004). Thus, the Order dismissing *Orman II* is clearly a final judgment on the merits for purposes of *res judicata*.

The second element is also satisfied. This lawsuit is filed by the same plaintiffs against CitiMortgage, which is the same defendant named in *Orman II*. Moreover, the additional defendants named in the Complaint clearly qualify as CitiMortgage's privies. The Third Circuit has held that "*res judicata* may be invoked against a plaintiff who has previously asserted essentially the same claim against different defendants where there is a close or significant relationship between successive defendants." *Hussein v. Reality*, 2013 U.S. Dist. LEXIS 143925, *10, 2013 WL 5530256 (D.N.J. Oct. 3, 2013) (citing *Lubrizol Corp. v. Exxon Corp.*, 929 F.2d 960, 966 (3d Cir. 1991)). Thus, while the Complaint purports to name CitiMortgage's employees and assignor (MERS) as additional defendants, who were not parties to *Orman II*, the Ormans are barred from raising the current claims against any of these parties, as they had a close relationship with CitiMortgage. *See Id.* (finding privity for *res judicata* purposes where newly named defendants were sued in their capacity as employee and agent of a company.) (*citing Salerno v. Corzine*, 449 F. App'x 118, 122-23 (3d Cir. Oct. 26, 2011) (affirming dismissal based on *res judicata* where newly named defendants and defendants in first suit advance common goals as agents of a single employer). Thus, the Ormans are barred from raising these claims against all named defendants.

Finally, the third element is clearly satisfied, as the Ormans claims are based on the same set of facts, namely CitiMortgage's alleged lack of standing to enforce the Mortgage. Courts take a "broad view of what constitutes the same cause of action" for

purposes of *res judicata*, and focus on "the essential similarity of the underlying events giving rise to the various legal claims." *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 277 (3d Cir. 2014) (citing *Elkadrawy v. Vanguard Grp.*, 584 F.3d 169, 173 (3d Cir. 2009) ("This analysis does not depend on the specific legal theory invoked, but rather [on] the essential similarity of the underlying events giving rise to the various legal claims.). Thus, the third element will be met where a claim arises from the same set of facts as a claim adjudicated on the merits in the earlier litigation. *Id.*

Here, although the Ormans purport to raise new legal theories, their claims are based on the same set of allegations related to CitiMortgage's right to enforce the Mortgage. The Court rejected their arguments in *Orman II*, and entered judgment in CitiMortgage's favor, finding that CitiMortgage had standing to foreclose, and that CitiMortgage was the proper party to bring a foreclosure action as a result of the Ormans' default. *See* Exhibit 'G' at p. 21. The claims the Ormans assert in this action could have been asserted in *Orman II* and, therefore, they are barred by *res judicata*.

*Orman II* involved the same claims, the same parties, and was fully litigated by the Ormans. Therefore, the judgment entered in *Orman II* clearly acts as *res judicata*, and effectively bars all claims that were raised, or could have been raised in that action. Therefore, the Ormans claims fail as a matter of law, and the Complaint should be dismissed with prejudice.

**b. The Ormans' claims are barred by *collateral estoppel.***

Furthermore, the Ormans are barred from contesting any issue related to CitiMortgage's standing, including the validity of the Mortgage or Assignment, under the doctrine of collateral estoppel, as these issues were fully litigated and determined in *Orman II*. As noted above, collateral estoppel precludes the relitigation of an issue

already decided in a prior action. *See Peloro v. United States*, 488 F.3d 163, 174-5 (3d Cir. 2007). Collateral estoppel has four essential elements: "(1) an issue decided in a prior action is identical to the one presented in a later action; (2) the prior action resulted in a final judgment on the merits; (3) the party against whom collateral estoppel is asserted was a party to the prior action; and (4) the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the prior action." *Brewer v. Hopple*, 2015 U.S. Dist. LEXIS 78025, *11 (E.D. Pa. May 18, 2015) (citing *Jones v. UPS*, 214 F.3d 402, 405-06 (3d Cir. 2000)).

Collateral estoppel clearly applies to all allegations raised by the Ormans. The first element is met, as the Ormans base their claims on the same issues raised in *Orman II*, namely the validity of the Assignment, and MERS' role in the Mortgage and Assignment. *See* Exhibit 'G' at pp. 17, 21 (noting that the Ormans argued in *Orman II* that "MERS does not comply with Pennsylvania law," and that unrecorded assignments render the Mortgage "fraudulent and void" (internal quotations omitted)). The Court found the Ormans' claims to be without merit, and conclusively determined these issues in CitiMortgage's favor in *Orman II*. *See id.* at p. 18 ("[b]y signing the Note, [the Ormans] agreed to the terms of the Mortgage, including the use of MERS"); *see also id.* at p. 21 (noting that the Ormans' allegations related to the "unrecorded assignments" fail to provide facts or law to support a cause of action). Thus, Judge Slomsky's Order and Opinion of March 30, 2012 clearly decided all issues regarding CitiMortgage's standing in favor of CitiMortgage.

Moreover, all other elements of collateral estoppel have been met, since: (1) the Order dismissing *Orman II* constituted a final judgment on the merits; (2) the Ormans

were clearly parties to the prior action; and (3) the Ormans had a full and fair opportunity to litigate the issues in *Orman II*. Therefore, the Ormans are precluded from bringing any of the claims raised in the Complaint, and accordingly, the Complaint should be dismissed with prejudice pursuant to Fed. R. Civ. Pro. 12(b)(6).

### 2. In Any Event, The Complaint Fails To Set Forth Any Cause of Action As A Matter Of Law.

Additionally, even if the Ormans were not barred from raising these claims under *res judicata* or collateral estoppel, each of the claims fail independently, because they fail to set forth any cause of action against any of the Defendants.

### a. The Complaint Fails In Its Entirety Because It Relates Exclusively To CitiMortgage's Standing to Foreclose.

First, the Complaint should be dismissed because the allegations contained therein constitute an improper attempt to raise standing, which is a defense to foreclosure, not a claim  for affirmative relief.  Pennsylvania law does not provide any cause of action for "lack of standing," as a matter of law.  A challenge to a mortgagee's standing cannot be considered a "claim," but rather, could be only be raised as an affirmative defense in a foreclosure action.  A "claim" is "[t]he aggregate of operative facts giving rise to a right enforceable by a court[.]"   Black's Law Dictionary (9th ed. 2009); *see also In re Pharmacy Benefit Managers Antitrust Litig*. (MDL 1782),700 F.3d 109, 114 (3d Cir. 2012) (labeling "lack of standing" as an affirmative defense).  Thus, a plaintiff does not assert any right relating to any particular transaction or occurrence by claiming "lack of standing."

Additionally, even if a plaintiff could establish a cause of action based on a mortgagee's alleged lack of standing, the Ormans' claims would fail, as CitiMortgage has conclusively established its right to enforce the Mortgage.

### i.    CitiMortgage has standing to enforce the Mortgage.

Under Pennsylvania Law, a party establishes its standing to enforce the mortgage through foreclosure by establishing that it holds the subject mortgage, in compliance with Pa. R. Civ. P. 1147, as it is the mortgagee of record that is the real party in interest in a foreclosure action. *See PHH Mortg. Corp. v. Powell*, 100 A.3d 611, 619 (Pa. Super. Ct. 2014) ("The Superior Court has held that the mortgagee is the real party in interest in a foreclosure action."). However, the Pennsylvania Superior Court has held that Pa. R. Civ. P. 1147(a)(1) does not require that a party have a recorded assignment as a prerequisite to filing a complaint in mortgage foreclosure. *See U.S. Bank v. Mallory*, 982 A.2d 986 (Pa. Super. Ct. 2009). Thus, a plaintiff can properly establish standing under Pa. R. Civ. P. 1147 either by averring the place of record of the assignments, or "by averring that it is the holder of the mortgage, and that it is in the process of formalizing an assignment thereof." *Mallory,* at 992.

Here, there is no question that CitiMortgage has standing to enforce the Mortgage, as CitiMortgage is the mortgagee by of the Assignment recorded on October 9, 2012 in the Office of Recorder of Deeds in Chester County in Book 8533, Page 858, Instrument #11215674." *See* Assignment, Exhibit 'C'. Thus, the Assignment conclusively establishes CitiMortgage's standing, as "[t]he assignee steps into the shoes of the assignor, assuming all of the assignor's rights, thereby becoming a real party in interest entitled to prosecute an action." *Mallory*, 982 A.2d at 994; *see also GMAC Mortg. v. Smith*, 2012 Phila. Ct. Com. Pl. LEXIS 278 at *6 (Pa. C.P. Aug. 24, 2012) ("once an effective assignment is made, the assignee becomes the real party interest, with all rights to obligor's performance and authority to pursue a claim against its interest."); *BAC*

*Home Loans Servicing, L.P. v. Viola*, 2014 Phila. Ct. Com. Pl. LEXIS 9 at *16 (Pa. C.P. Jan. 28, 2014) (same); *Nationstar Mortg. LLC v. Lark*, 2012 Phila. Ct. Com. Pl. LEXIS 138 at*5 (Pa. C.P. May 16,  2012) ("[a]n assignee stands in the shoes of the assignor, assumes his rights, and since he has a right to be enforced is a "real party in interest".).

Moreover, CitiMortgage has also established that it is the holder of the Note, *see* Note, Exhibit 'A', and as such, it has standing to enforce the Mortgage, notwithstanding any alleged defects in the chain of assignments.  *See JPMorgan Chase v. Murray*, 63 A.3d 1258, 1266 (Pa. Super. Ct. 2013) ("the promissory Note secured by the mortgage is a negotiable instrument under the PUCC, and "[a]s such, [] [the mortgagor's] challenges to the chain of possession by which Appellee came to hold the Note [is] immaterial to its enforceability by [the mortgagee]." *Murray* , 63 A.3d at 1266.

Pursuant to the Pennsylvania Uniform Commercial Code ("PUCC"), the **"[p]erson entitled to enforce"** the note is either: "(i) the holder of the instrument, (ii) a nonholder in possession of the instrument who has the rights of a holder, or (iii) a person not in possession of the instrument who is entitled to enforce the instrument." 13 Pa.C.S. § 3301.  "When indorsed in blank[14], an instrument becomes payable to bearer and may be negotiated[15] by transfer of possession alone until specially indorsed."   13 Pa.C.S. § 3205(b).  When specially indorsed, an instrument becomes payable to the identified person and may be negotiated only by the indorsement of that person. 13 Pa.C.S. § 3205(a).

---

[14] "If an indorsement is made by the holder of an instrument and it is not a special indorsement, it is a 'blank indorsement'." 13 Pa.C.S. § 3205(b)

[15] "'Negotiation' means a transfer of possession, whether voluntary or involuntary, of an instrument by a person other than the issuer to a person who thereby becomes its holder." 13 Pa.C.S. § 3201(a)

Here, CitiMortgage has established that it is possession of the Note, which is duly indorsed in blank, which is sufficient to establish CitiMortgage's status as the holder of the Note. *See Wells Fargo Bank, NA v. Norton*, 2012 Phila. Ct. Com. Pl. LEXIS 398 at *6 (Pa. C.P. Nov. 26, 2012) (holding that a mortgagee had established its standing to foreclose as the holder of the note, by attaching a copy of the note, bearing a blank indorsement, to its complaint.).

Additionally, the Ormans' contention that Defendants are liable for relying on a "fraudulent" or "counterfeit" Note, *see* Complaint at ¶ 146, is clearly erroneous, and should be summarily rejected by the Court. The Ormans admit signing the Note, *see* Complaint at ¶ 22, and as such, there is no basis to find that the Note is not valid. *See Powell*, 100 A.3d at 619 ("A rebuttable presumption exists that the signature is authentic and authorized […] [u]ntil introduction of such evidence [sufficient showing of grounds for denial of validity] the presumption requires a finding for the plaintiff" (citing 13 Pa. C.S. § 3308)).

Furthermore, the Ormans' allegations regarding Federal National Mortgage Association's ownership of the Loan, *see* Complaint at ¶ 42, should also be dismissed, as ownership of the Loan has no bearing on CitiMortgage's right to enforce the Mortgage. In *Powell*, 100 A.3d at 621, the Superior Court explicitly held that "[o]wnership of the Note" is irrelevant to the determination of whether a plaintiff has standing to enforce the note. *See Id.* ("The right to enforce an instrument and ownership of the instrument are two different concepts […] Ownership rights in instruments may be determined by principles of the law of property, independent of Article 3, which do not depend on whether the instrument was transferred under Section 3203 […] Evidence that some other

entity may be the "owner" or an "investor" in the Note is not relevant to this determination, as the entity with the right to enforce the Note may well not be the entity entitled to receive the economic benefits from payments received thereon."). Therefore, the Ormans' allegations regarding CitiMortgage's "ownership" of the loan have no relevance to CitiMortgage's standing to enforce the Mortgage.

### ii. The Ormans Cannot Challenge the Assignment of Mortgage.

Moreover, the Ormans' allegations regarding the Assignment should be rejected, as the Assignment is valid, and as the Ormans lack standing to challenge the Assignment in any manner.

### (a) The Ormans lack standing to challenge the Assignment.

The Ormans' attempts to challenge the Assignment should be summarily rejected because they lack standing to challenge the Assignment in any manner, as they are not parties to, nor third party beneficiaries of the Assignment, and as they cannot demonstrate any potential injury thereunder.

A person who is not a party or a third party beneficiary to a contract lacks standing to assert a claim related to the contract in question. *See Ira G. Steffy & Son, Inc. v. Citizens Bank of Pa.,* 7 A.3d 278, 278-79 (Pa. Super. 2010) (holding that even if plaintiff could prove defendant's misconduct, the plaintiff had no standing because he was a non-party and was not a third party beneficiary of the underlying contract in dispute); *see also, Shuster v. Pa. Turnpike Comm'n*, 149 A.2d 447, 452 (Pa. 1953) (one who is not a party to a contract lacks standing to argue that the contract is invalid). The core concept is that a person who is not adversely affected in any way by the matter he seeks to challenge is not "aggrieved" thereby and has no standing to obtain a judicial

resolution of his challenge." *William Penn Parking Garage, Inc., et al., v. Pittsburgh*, 346 A.2d 269 (Pa. 1975).

The Assignment was executed by MERS, as nominee for MortgageIT and its successors and assigns, and assigned the Mortgage to CitiMortgage. The Ormans are not parties to the Assignment, and as such, they lack standing to raise any claim thereunder.

Additionally, even assuming, *arguendo*, that the Assignment were defective, the Ormans cannot demonstrate any potential injury from its enforcement. CitiMortgage is the holder of the Note, and any payments made by the Ormans would discharge their liability thereunder, notwithstanding any alleged defect in the Assignment. *See Viola*, 2014 Phila. Ct. Com. Pl. LEXIS 9 at *16 (holding that borrower could not demonstrate any potential injury under an alleged defective assignment of mortgage, and thus lacked standing to challenge the same, where mortgagee had established that it held the note, as "any payments […] will discharge [] liability under the Note.") (*citing* 13 Pa. C.S. § 3602(a); *In re Walker*, 466 B.R. 271 (Bankr. E.D. Pa. 2012); *Murray*, 63 A.3d 1258). Therefore, notwithstanding the erroneous nature of the Ormans' claims, their challenge to the Assignment fails as a matter of law as they lack standing to raise any such claims.

### (b)    The Assignment is Valid.

Throughout the Complaint, the Ormans contend that Judge Slomsky's opinion dismissing *Orman II* bars any assignment from MERS as nominee of MortgageIT dated after June 23, 2007. *See, e.g.,* Complaint at ¶ 24. The Ormans' argument seems to be premised on the misplaced belief that the execution of the Assignment after the transfer of the Loan somehow renders the Assignment void or fraudulent. *See* Complaint at ¶¶ 23-27. Their arguments are clearly misguided however, as Judge Slomsky's Opinion in *Orman II* definitively found that CitiMortgage's interest in the Loan is valid. *See*

Exhibit 'G' at pp. 5, 20-22 (stating that interest in Note and Mortgage were transferred to CitiMortgage on June 23, 2007, and dismissing quiet title claim as CitiMortgage was the proper party to bring a foreclosure action). This argument is also erroneous under Pennsylvania law, as there is no requirement that an assignment of mortgage be executed at the time the loan is transferred. This is because the loan is not transferred by the assignment of mortgage, but rather, is transferred by the negotiation of the underlying note. *See* 13 Pa.C.S. § 3201(a); *Murray*, 63 A.3d at 1266.

Assignments of mortgage are recorded for the purpose of providing notice of a party's interest to future encumbrancers. *See Bank of Am., N.A. v. Hallowich*, , 34 Pa. D. & C.5th 276, 289 (Pa. County Ct. 2013). Accordingly, a party's interest in the loan is established on the date of the transfer, not the date the assignment of mortgage is recorded. *See Id.* (holding that a transfer of interest is established on the date of the transfer, not the date of recording, and as such, the recording of an interest does not "render the time prior to the recording invalid."). This principle was affirmed by the Superior Court in *Mallory*, 982 A.2d at 994, which confirmed that a party may enforce a mortgage notwithstanding the lack of a recorded assignment of mortgage, holding that the assignment may be executed and recorded even after a foreclosure complaint has been filed. Therefore, notwithstanding the Ormans' erroneous claims,, the Assignment is clearly valid, and as such, their attempts to challenge same should be rejected.

(c)     **MERS has authority to assign the Mortgage under Pennsylvania law.**

Additionally, the Ormans' allegations related to MERS should be rejected, as they are clearly contrary to Pennsylvania law, which recognizes MERS' authority to act as a nominee for lenders under mortgage instruments.

In *Mortgage Elec. Registration Sys. v. Ralich*, 982 A.2d 77 (Pa. Super. 2009), the mortgagors attempted to forestall a sheriff's sale by arguing, *inter alia*, that MERS lacked the authority to foreclose. The Superior Court held that the terms of the mortgage clearly gave MERS, as nominee, the authority to enforce the loan. *Ralich*, 982 A.2d at 81; *see also GMAC Mortg. v. Smith*, 2012 Phila. Ct. Com. Pl. LEXIS 278 at *6 (Pa. Com. Pl. Aug. 24, 2012) ("MERS had authority to assign the Mortgage under the terms of the Mortgage."); *Marjer, Inc. v. Ligus*, 2013 Pa. Dist & Cnty. Dec. LEXIS 280 at *14 (Pa. C.P. Apr. 5, 2013) ("According to the [Mortgage], MERS held legal title and the right to exercise any and all of those interests including, but not limited to, the right to foreclose.").

Like the mortgage in *Ralich*, the Mortgage signed by the Ormans expressly granted MERS the right to exercise "any and all" interests incidental to legal title; which interests include the ability to assign the mortgage. *See* the Mortgage at p. 3 ("[Borrower] does hereby mortgage, grant and convey to MERS (solely as nominee for [lender] and [lender's] successors and assigns) and to the successors and assigns of MERS, the [Property]"). By signing the Mortgage, the Ormans acknowledged that MERS is authorized to act as nominee for the lender, and to assign the Mortgage. This was also the finding of this Court in Orman II, which stated that "[w]hile Plaintiffs disagree with MERS . . . their Note demonstrates that they agreed to participate in the MERS […] [and as such] they cannot use their dissatisfaction to . . . avoid their Loan." *See* Exhibit 'G' at p. 18. Therefore, under the terms of the Mortgage and Pennsylvania law, MERS did have authority to assign the Mortgage, and the Ormans' claims to the contrary fail as a matter of law.

The Ormans also request "judicial notice" of *Montgomery Cnty., Pa. v. MERSCORP, Inc.*, 16 F. Supp. 3d 542 (E.D. Pa. 2014), and relying thereon, argue that election of MERS as nominee violates Pennsylvania law, and that CitiMortgage and MERS have defrauded the recorder of deeds through the nomination of MERS. *See* Complaint at ¶¶ 73-84. While the *Montgomery County* decision does not support either of these allegations, the Court need not consider these arguments in any manner, as the Third Circuit overturned that decision on August 3, 2015.[16] *See Montgomery Cnty. v. MERSCORP Inc.*, 2015 U.S. App. LEXIS 13482 (3d Cir. Aug. 3, 2015). In *Montgomery County*, the Third Circuit held that Pennsylvania law <u>does not</u> require that a conveyance be recorded, and that the relevant statute explicitly provides that the <u>only</u> consequence of a failure to record is that the conveyance will be "void as to any subsequent bona fide purchaser." *Montgomery Cnty.*, 2015 U.S. App. LEXIS 13482 at *10 (citing 21 P.S. § 351). Thus, the Ormans' reliance on the District Court's decision in *Montgomery County*, although misplaced under that decision, need not be considered in any manner, as Pennsylvania law clearly does not require that a conveyance be recorded to be valid.

In sum, the Ormans' attempts to challenge CitiMortgage's standing, based on their allegations regarding the Assignment and MERS, are clearly erroneous under Pennsylvania law. Because all of the Ormans' claims are premised on these allegations, the Complaint clearly fails to set forth any cause of action as a matter of law, and as such, the Complaint should be dismissed with prejudice.

---

[16] It is noted that even if the District Court's decision had not been overturned, the decision does not support the Ormans' arguments. Nowhere does the *Montgomery County* court say that the election of MERS renders a Mortgage void and unenforceable against the mortgagors. Rather, the decision stood for the proposition that all transfers must be recorded under Pennsylvania law.

**C.** **The Complaint Fails to Plead a Cause of Action Under the FDCPA or the FCEUA.**

In Counts One and Two, the Ormans allege that Defendants are liable for violations of the FDCPA and the FCEUA.[17] *See* Complaint at ¶¶ 43-61. The Ormans allege that CitiMortgage violated Section 1692c of the FDCPA by sending two loan modification packages after the Ormans alleged sent a notice to cease and desist on June 7, 2010, *see* Complaint at ¶¶ 45, 55, and that Defendants violated Section 1692e of the FDCPA by filing a brief in opposition to their Quiet Title Appeal, and by filing the Foreclosure Complaint. *See* Complaint at ¶ 49. These allegations can be summarily rejected, as the Ormans do not allege any conduct that is subject to the FDCPA.

The FDCPA is not applicable to the Ormans' allegations, as they do not claim that the alleged loan modification application or the brief filed in opposition to their Quiet Title Appeal, demanded payment from them and thus constituted an effort to collect a debt. Courts have routinely held that communications that do not demand payment cannot be considered communications "in connection with the collection of any debt" under the FDCPA. *See Derisme v. Hunt Leibert Jacobson P.C.*, 880 F. Supp. 2d 339, 372 (D. Conn. 2012) (citing *Bailey v. Security Nat'l Serv. Corp.*, 154 F.3d 384, 388–89 (7th Cir.1998) (holding that letter that "merely inform[ed] the [plaintiffs] about 'the current status' of their account" was not subject to the FDCPA); *McCready v. Jacobsen*, No. 06–2443, 2007 WL 1224616, at *1 (7th Cir. April 25, 2007) (holding that letter that did not demand payment but simply provided, at Plaintiff's request "an accounting of how his security deposit had been applied toward unpaid rent and repairs" was not a collection

---

[17] The Ormans' FCEUA allegations are entirely derivative of their FDCPA claim. In any event, the FCEUA does not provide for a private right of action. See 73 P.S. § 2270.1, *et. seq.*, *Benner v. Bank of Am., N.A.*, 917 F. Supp. 2d 338, 359 (E.D. Pa. 2013).

letter subject to the FDCPA); *Gillespie v. Chase Home Fin., LLC*, No. 3:09–CV–191–TS, 2009 WL 4061428, at *5 (N.D. Ind. Nov. 20, 2009) (holding that letters were not the type of communications proscribed by Section 1692 where the letters only "advised the mortgagors that their delinquent debts had been turned over to the Defendant's Homeowner's Assistance Department, and stated that options may be available to the mortgagors to resolve their delinquencies and save their homes from foreclosure."); *Mabbitt v. Midwestern Audit Serv., Inc.*, No. 07–11550, 2008 WL 723507, at *4 (E.D. Mich. Mar. 17, 2008) (holding that letter that made no demand or attempt to obtain payment of a debt and instead notified consumer that "an outstanding balance ha[d] been transferred to her new account" was not a communication in connection with the collection of any debt.).

Moreover, the Ormans fail to allege any facts which, taken as true, would support a violation of Sections 1692c or 1692e of the FDCPA. *See, e.g., Iqbal*, 556 U.S. at 663 (holding that "a claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."). Specifically, the Ormans' fail to allege any violation of Section 1692c, which contains three subsections that specify different categories of prohibited communications, as they fail to identify what provision they allege was violated. *See Souders v. Bank of Am.*, No. 1:CV-12-1074, 2012 WL 7009007, at *14 (M.D. Pa. Dec. 6, 2012) (dismissing FDCPA claim where plaintiff "failed to state what, if any, FDCPA section Defendants had allegedly violated."). Additionally, the Ormans fail to allege how the purported notice allegedly sent on June 7, 2010 relates to the loan modification packages sent more than four years later. *Kimmel v. Phelan Hallinan & Schmieg, PC*, 847 F.Supp.2d 753,

769–770 (E.D.Pa.2012) (stating that Plaintiff must "link each alleged violation of the FDCPA to the predicate factual allegations giving rise to the violation in order to state a claim . . . .").

Likewise, the Ormans' fail to state any claim Section 1692e,[18] as they do not even identify what statements in the Quiet Title Brief or the Foreclosure Complaint they allege to be false or misleading. Accordingly, the Complaint fails to plead any cause of action under Sections 1692c or 1692e of the FDCPA, and as such, Counts One and Two should be dismissed with prejudice.

> **D.** **The Complaint Fails to Plead a Cause of Action Under RICO or the Pennsylvania Corrupt Organizations Act.[19]**

In Counts Three and Four, the Ormans generally allege that Defendants violated RICO and the Pennsylvania Corrupt Organizations Act by "engaging in a scheme to defraud homeowner borrowers, the federal government, and the recorder of deeds." *See* Complaint at ¶¶ 62-99. These allegations fall woefully short of pleading a cause of action under RICO.

In considering RICO claims, courts must attempt to achieve results "consistent with Congress's goal of protecting legitimate businesses from infiltration by organized crime." *United States v. Porcelli*, 865 F.2d 1352, 1362 (2d Cir.), *cert. denied*, 493 U.S. 810 (1989). "Because the 'mere assertion of a RICO claim . . . has an almost inevitable stigmatizing effect on those named as defendants . . . courts should strive to flush out frivolous RICO allegations at an early stage of the litigation.'" *Katzman v. Victoria's*

---

[18] 15 U.S.C. § 1692e prohibits the use of any "false deceptive, or misleading representation or means in connection with the collection of any debt."

[19] The Ormans' allegations under the Pennsylvania Corrupt Organizations Act are entirely derivative of their RICO claim.

*Secret Catalogue*, 167 F.R.D. 649, 655 (S.D.N.Y. 1996) (quoting *Figueroa Ruiz v. Alegria*, 896 F.2d 645, 650 (1st Cir. 1990)), <u>aff'd</u>, 113 F.3d 1229 (2d Cir. 1997).  To state a claim for RICO, a party must allege, *inter alia*, the existence of a RICO enterprise and a pattern of racketeering activity involving defined predicate acts. *See United States v. Irizarry*, 341 F.3d 273, 285 (3d Cir. 2003).  The Ormans have failed to satisfy either of these requirements.

1.    **The Complaint fails to plead the existence of a RICO enterprise.**

The existence of a RICO enterprise is an essential element of a civil RICO claim. *Palmetto State Medical Center, Inc. v. Operation Lifeline*, 117 F.3d 142, 148 (4th Cir. 1997); *Bonner v. Henderson*, 147 F.3d 457, 459 (5th Cir. 1998).   Simply listing a string of entities and alleging that they engaged in conduct that purportedly harmed plaintiffs, *see* Complaint at ¶¶ 62-99, is insufficient to allege the existence of a RICO enterprise. *See Richmond v. Nationwide Cassel, L.P.*, 52 F.3d 640, 646 (7th Cir.1995).  Rather, a plaintiff must allege facts showing an ongoing organization with an ascertainable decision-making structure, formal or informal, and some degree of continuity.  *See United States v. Turkette*, 452 U.S. 576, 583 (1981); *David v. Hudgins*, 896 F. Supp. 561, 568 (E.D. Va. 1995) ("Conclusory allegations that disparate parties were associated in fact are insufficient to sustain a RICO claim, absent allegations as to how the members were associated together in an enterprise.").  Here, the Ormans offer only conclusory allegations regarding the existence of an alleged enterprise.  *See* Complaint at ¶¶ 67-69 (Defendants . . . constitute an association –in-fact enterprise […] [and] have organized their operation into a cohesive group. . . .").  The Ormans fail to offer any factual

allegations to support the finding of a RICO enterprise, and do not even allege what Defendant(s) they are referring to.

The Ormans have also failed to allege that each defendant conducted or participated in the affairs of a distinct RICO enterprise. Indeed, this RICO element requires specific allegations that satisfy the "operation or management" test enunciated in *Reves v. Ernst & Young*, 507 U.S. 170, 183(1993). In *Reves*, the Supreme Court held that a defendant could be found to have conducted or participated in the conduct of an enterprise only if it was involved in the "operation or management" of the enterprise. The Court explained that the term "conduct," as used in section 1962(c), "requires an element of direction" and rejected the view that "almost any involvement in the affairs of an enterprise would satisfy the 'conduct or participate' requirement." *Id.* at 178. The Court recognized that to "participate . . . in the conduct" of the affairs of the enterprise "one must have some part in directing those affairs." *Id.* at 178, 179. Furthermore, the Court held that a defendant "must have conducted or participated in the conduct of the enterprise's affairs, not just [its] own affairs." *Id.* at 183. The Complaint contains no allegations satisfying this requirement. *See, e.g., BancOklahoma Mortg. Corp. v. Capital Title Co.*, 194 F.3d 1089, 1100 (10th Cir. 1999) (each defendant must have participated in the conduct of the affairs of the RICO enterprise); *Bast v. Cohen, Dunn & Sinclair, P.C.*, 59 F.3d 492, 495 (4th Cir. 1995) (plaintiff must allege facts satisfying *Reves* test); *FDIC v. First Interstate Bank, N.A.*, 937 F. Supp. 1461, 1472 (D. Colo. 1996) ("[l]iability depends on showing that the defendants conducted or participated in the conduct of the enterprise's affairs, not just their own affairs.") (citations omitted). Thus, the Complaint clearly fails to plead a RICO enterprise, which is fatal to Counts Three and Four.

### 2. The Complaint fails to allege a pattern of racketeering activity.

Moreover, the RICO claim should also be dismissed because the Complaint fails to allege a pattern of racketeering activity. A RICO pattern of racketeering activity requires the commission of at least two predicate acts. 18 U.S.C. § 1961(1) & (5). Section 1961(1) defines "pattern of racketeering activity" to include conduct that is "chargeable" or "indictable" under a host of state and federal laws. *Pyke v. Laughing*, No. 92-CV-555, 1996 WL 252660, at *4 (N.D.N.Y. May 9, 1996) (citing *National Organization for Women v. Scheidler*, 510 U.S. 249, 114 S.Ct. 798, 803 (1994). The Ormans have not even attempted to allege a pattern of racketeering activity or the commission of any predicate acts. Rather, they merely allege that Defendants violated RICO by relying on a "forged" or "fraudulent" assignment, and by electing MERS as nominee under the Mortgage. *See* Complaint at ¶¶ 71, 77, 81-84. Neither of these allegations constitutes a predicate act under RICO, and in any event, they have already been rejected by this Court. *See Morelli v. Morelli*, No. CIV. A. 93-5619, 1994 WL 327640, at *2 (E.D. Pa. July 7, 1994) (forgery does not qualify as predicate acts under RICO).

Additionally, the Complaint does not allege any facts demonstrating that the Ormans, or anyone else, relied upon any mail or wire fraud allegedly committed by Defendants, even assuming they were attempting to plead the same as predicate acts and, consequently, they have failed to allege the requisite proximate cause. *See Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 658-59 (2008) (RICO plaintiff must show that "someone relied on the defendant's misrepresentations."); *UFCW Local 1776 v. Eli Lilly & Co.*, 620 F.3d 121, 133 (2d Cir. 2010) (RICO plaintiffs alleging mail fraud must prove reliance "as part of their chain of causation"); *Miller v. Pocono Ranch Lands Prop.*

35

*Owners Assoc., Inc.*, 2012 WL 6803269, at *10 (E.D. Pa. Dec. 20, 2012) ("reliance is a necessary component of proximate causation for a civil RICO action predicated on fraud") (citation omitted).

Furthermore, whatever the predicate act relied upon by the Ormans, to demonstrate the requisite injury for a RICO claim, "a plaintiff must allege a concrete financial loss" proximately caused by the predicate acts. *See, e.g., Miller v. Pocono Ranch Lands Prop. Owners Assoc., Inc.*, 2012 WL 6803269, at *10 (M.D. Pa. Dec. 20, 2012) (internal quotation marks and citation omitted). To satisfy this requirement, "the plaintiff must set forth allegations of proof and actual monetary loss…." *Id.* Once again, the Ormans have not done so.

The Complaint clearly fails to plead a cause of action under RICO or the Pennsylvania Corrupt Organizations Act, and as such, Counts Three and Four should be dismissed with prejudice.

     **E.**     **The Complaint Fails to Plead a Cause of Action for Negligent and / or Intentional Misrepresentation.**

In Count Six, the Ormans purport to raise a claim for "negligent and/or intentional misrepresentation, based on their allegation that the Assignment is void. *See* Complaint at ¶¶ 155-168. This claim obviously lacks merit for the reasons discussed above. Moreover, even if one were to disregard the specious nature of these claims, the allegations fail to set forth a cause of action as a matter of law.

     **1.**     **Intentional Misrepresentation Claim Fails as a Matter of Law.**

The Complaint fails to set forth a cause of action for intentional misrepresentation. In order to plead a claim for "intentional misrepresentation," or fraud, a claimant must plead the following elements: (1) a representation; (2) that is material to

the transaction at issue; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) resulting injury, which was proximately caused by the reliance. *Bortz v. Noon*, 729 A.2d 555, 560 (Pa. 1999). Further, these elements must be pled with "particularity" pursuant to Federal Rule of Civil Procedure 9(b). *See Christidis v. First Pa. Mortgage Trust*, 717 F.2d 96, 99 (3d Cir. 1983) (stating that Rule 9(b) applies to state-law fraud claims). Pursuant to Rule 9(b), the Ormans are required to plead the circumstances of the alleged fraud with sufficient particularity "to place the defendants on notice of the precise misconduct with which they are charged," which requires "pleading the date, place or time of the fraud." *Lum v. Bank of Am.*, 361 F.3d 217, 223-24 (3d Cir. 2004).

The Ormans have not pled any of these required elements, and in fact, they have failed to identify a single misrepresentation made by any Defendant. *See* Complaint at ¶¶ 1-197. Rather, the Ormans merely allege that Defendants relied on the Assignment in opposition to their frivolous lawsuits, and in the Foreclosure Action. *See* Complaint at ¶¶ 158-163. The Complaint clearly fails to identify a misrepresentation made by Defendants. Nor does it allege how any such misrepresentations were material to any transaction, were made with the intent to mislead them or that they reasonably relied on the same to their detriment. Moreover, as discussed herein above, the Ormans cannot plausibly allege that they were harmed by the Assignment in any manner, since CitiMortgage is the holder of the Note, and any harm suffered was caused by the Ormans' own default under the Mortgage. Thus, the Ormans have not stated, and cannot state, a claim for intentional misrepresentation.

### 2.     <u>Negligent Misrepresentation Claim Fails as a Matter of Law.</u>

While any purported claim for negligent misrepresentation fails for the reasons discussed above, *e.g.*, the Complaint does not identify any misrepresentation made by Defendants, it is also subject to dismissal for the reason that Defendants owe no duty to the Ormans. Under Pennsylvania law a claim of negligent misrepresentation requires a showing that a defendant owed a plaintiff a duty recognized by law. *Angeloff v. Deardorff*, No. 1:09-CV-2169, 2010 WL 4853788 at *4 (M.D. Pa. Nov. 23, 2010), citing *Nw. Mut. Life Ins. Co. v. Babayan*, 430 F. 3d 121, 139 (3d Cir. 2005). Pennsylvania law is clear, however, that lenders do not owe any duties to borrowers. *Gonzalez v. Old Kent Mtge. Co.,* 2000 U.S. Dist. LEXIS 14530, No. Civ. A. 99-5959, 2000 WL 1469313, at *6 (E.D. Pa. Sept. 21, 2000) (citing *Federal Land Bank of Baltimore v. Fetner*, 410 A.2d 344, 348 (Pa. 1979)); *see also Acad. Indus. v. PNC Bank, N.A*., 2002 Phila. Ct. Com. Pl. LEXIS 94 (Pa. C.P. May 20, 2002). Therefore, any claim for negligent misrepresentation fails as a matter of law, and as such, Count Six should be dismissed.

### F.     <u>The Complaint Fails to Plead a Cause of Action for Negligent and/or Intentional Infliction of Emotional Distress.</u>

#### 1.     <u>The Complaint fails to plead a cause of action for negligent infliction of emotion distress.</u>

To the extent the Ormans purport to state a cause of action for negligent infliction of emotional distress ("NIED"), the claim fails as a matter of law. To state a claim for NIED, the Ormans must allege that they contemporaneously observed and perceived negligent acts which inflicted injury upon a close relative and suffered shock as a result thereof. *See, Bloom v. DuBois Regional Medical Center*, 409 Pa. Super. 83, 101 (Pa. 1991). The Ormans have failed to allege that they suffered any harm or that they

contemporaneously observed and perceived negligent acts which inflicted harm. Having failed to allege the elements of an NIED claim, the Ormans claim should be dismissed.

<strong>2. The Complaint fails to plead a cause of action for intentional infliction of emotional distress.</strong>

The Complaint likewise fails to plead a cause of action for intentional infliction of emotional distress ("IIED"). The Pennsylvania Supreme Court has warned that "courts have been chary to allow recovery for a claim of intentional infliction of emotional distress… Cases which have found a sufficient basis for a cause of action of intentional infliction of emotional distress have had presented only the most egregious conduct." *Hoy v. Angelone*, 720 A.2d 745, 753-54 (Pa. 1998). Thus, such a claim is "reserved by the courts for only the most clearly desperate and ultra extreme conduct." *Id.* at 753 n.10. To satisfy this standard, "'[t]he conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society.'" *Id.* at 754 (quoting *Buczek v. First Nat'l Bank of Mifflintown*, 531 A.2d 1122, 1125 (Pa. Super. Ct. 1987)); *see also Smith v. Sch. Dist. of Philadelphia*, 112 F. Supp. 2d 417, 428 (E.D. Pa. 2000) ("Pennsylvania courts have found intentional infliction of emotional distress only where the conduct at issue has been 'atrocious' and 'utterly intolerable in a civilized community'") (quoting *Banyas v. Lower Bucks Hosp*., 437 A.2d 1236 (Pa. Super. Ct. 1981)).

The types of cases in which the courts have allowed IIED claims to proceed involve behavior that the community would find shocking and outrageous. *See*, *e.g.*, *Combs v. NCO Financial Systems, Inc.*, No. 10-5673, 2011 WL 1288686, at *4 (E.D. Pa. Apr. 5, 2011) (providing examples of sufficient claims where the defendant "(1) hid the

body of the plaintiff's son after killing him in an automobile accident; (2) fabricating records indicating that the plaintiff had killed a third party, causing him to be indicted for homicide; and (3) knowingly releasing falsified medical information to the press indicating that the plaintiff suffered from a fatal disease." (citation omitted)); *Corbett v. Morgenstern*, 934 F. Supp. 680 (E.D. Pa. 1996) (sexual abuse by a psychotherapist, over the course of twelve years, of a patient with borderline personality disorder and other psychological problems stemming from a history of childhood sexual abuse).

As a matter of law, none of the Ormans' allegations gives rise to valid claim for intentional infliction of emotional distress. The Ormans admit that they defaulted under the terms of the Loan, and allege only that the alleged defective Assignment should preclude Defendants from enforcing the terms of the Mortgage. This is clearly not the type of shocking or outrageous conduct necessary to plead a claim for intentional infliction of emotional distress. *See Hanczyc v. Valley Distributing and Storage Co., Inc.*, No. 10-2397, 2011 WL 1790093, at *4 (M.D. Pa. May 9, 2011) (granting motion to dismiss intentional infliction of emotional distress claim because "the actions and conduct Plaintiff alleges … would likely not cause an average member of the community to exclaim, 'outrageous!'").

### G. The Complaint Fails to Plead a Claim for Conspiracy to Defraud.

In Count Ten, the Ormans purport to raise a claim for criminal conspiracy under 18 Pa. C.S. § 903 and 18 U.S.C. § 371. *See* Complaint at ¶¶ 187-197. These allegations can be summarily rejected, as these statutes do not provide for any private cause of action. *See Schnell v. Bank of New York Mellon*, 828 F. Supp. 2d 798, 804 (E.D. Pa. 2011) (borrower cannot bring criminal conspiracy charge under 18 Pa. C.S. § 903 against mortgagee, as "[t]hat task is left to the government"); *Jones v. Lockett*, 2009 U.S. Dist.

LEXIS 129347, *21 (W.D. Pa. June 8, 2009) (18 U.S.C. § 371 is a criminal statute which does not provide for a private cause of action) (citing *Luzerne County Children and Youth Services*, NO. CIV. A. 3:CV-08-1340, 2008 U.S. Dist. LEXIS 106446, 2008 WL 4753709, at *3 (M.D.Pa., Oct. 29, 2008) ("Criminal statutes do not generally provide a private cause of action nor basis for civil liability.").  Accordingly, Count Ten clearly fails to set forth any cause of action as a matter of law, and as such, it should be dismissed with prejudice.

### H.    Claims Against Individual Defendants Should be Dismissed.

Even if any of the Ormans' claims survive this Motion to Dismiss, defendants Cory O'Bryant, LaTanya M. Brigham, Sybil Short, Helene E. Robinson, Gillian Howard, and Sandra A. West should be dismissed from this action, as the Complaint does not allege that these individuals engaged in any wrongdoing.  In fact, the Complaint fails to include a single factual allegation regarding any of these defendants, and lumping them together as "Defendants" is plainly insufficient.  *See, e.g., Silverstein v. Percudani*, 422 F. Supp. 2d 468, 473 (M.D. Pa. 2006).  Accordingly, all claims should be dismissed as to these defendants, regardless of the outcome of this Motion to Dismiss.  *See Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

## V.    CONCLUSION

The Ormans' Complaint should be dismissed in its entirety pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  The Court should decline jurisdiction over this matter under the *Colorado River* Abstention Doctrine and the Anti-Injunction Act because the Complaint constitutes an improper collateral attack on a parallel state court foreclosure action.  Moreover, the Complaint is barred by *res judicata* and collateral estoppel, as it seeks to relitigate claims that were definitively determined in

Defendants' favor. Additionally, even setting these bars aside, each claim is individually subject to dismissal because the allegations are entirely without merit, and because the Complaint fails to plead a single viable cause of action.

WHEREFORE, Defendants CitiMortgage, Inc., Cory O'Bryant, LaTanya M. Brigham, Sybil Short, Helene E. Robinson, Gillian Howard, Mortgage Electronic Registration Systems, Inc., and Sandra A. West respectfully request that the Complaint filed by Plaintiffs Thomas A. Orman and Leslie E. Orman be dismissed with prejudice.

Respectfully submitted,

Dated: August 25, 2015

/s/ Martin C. Bryce, Jr.
Martin C. Bryce, Jr.
BALLARD SPAHR LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103-7599
Tel: (215) 665-8500
Fax: (215) 864-8999
bryce@ballardspahr.com

*Attorneys for Defendants CitiMortgage, Inc., Cory O'Bryant, LaTanya M. Brigham, Sybil Short, Helene E. Robinson, Gillian Howard, Mortgage Electronic Registration Systems, Inc., and Sandra A. West*