IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| THOMAS A. ORMAN, et al.,<br><br>              Plaintiffs,<br><br>    v.<br><br>CITIMORTGAGE, et al.,<br><br>              Defendants. | CIVIL ACTION<br>NO. 15-3432 |

## OPINION

**Slomsky, J.**                                              **April 21, 2016**

## I.    INTRODUCTION

Plaintiffs Thomas and Leslie Orman bring this civil action against numerous Defendants. They include: CitiMortgage, Inc., Cory O'Bryant, LaTanya M. Bringham, Sybil Short, Helene E. Robinson, Gillian Howard, Mortgage Electronic Registration Systems, Inc. ("MERS"), and Sandra A. West (collectively, the "CitiMortgage Defendants"); Ballard Spahr LLP ("Ballard"), Nathan Catchpole, Esquire, Martin C. Bryce, Esquire, and Daniel JT McKenna, Esquire (collectively, the "Ballard Defendants"); Powers Kirn & Associates, LLC ("Powers"), Matthew J. McDonnell, Esquire, and Daniel C. Fanaselle, Esquire (collectively, the "Powers Defendants"); and The Law Offices of Gregory Javardian ("Javardian") and Sean P. Mays, Esquire (collectively, the "Javardian Defendants"). (Doc. No. 1.)

Plaintiffs allege that Defendants have violated federal law under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, and the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 et seq. They also allege the following violations of state law: the Pennsylvania Fair Debt Collection Practices Act ("PFDCPA"), 73 Pa. Cons. Stat. § 2270.4; the Pennsylvania Corrupt Organizations ("PaCO") statute, 18 Pa. Cons. Stat. § 911;

1

Conspiracy to Defraud, 18 Pa. Cons. Stat. § 903 and 18 U.S.C. § 371; the Pennsylvania Code of Professional Conduct; and claims of Negligent and/or Intentional Misrepresentation, and Negligent and/or Intentional Infliction of Emotional Stress. (Doc. No. 4 at 1-2.)

Before the Court are Motions to Dismiss Plaintiffs' Amended Complaint filed by the Powers Defendants (Doc. No. 10), the Javardian Defendants (Doc. No. 11), the CitiMortgage Defendants (Doc. No. 12), and the Ballard Defendants (Doc. No. 13). Also before the Court is Plaintiffs' Motion to Withdraw Complaint. (Doc. No. 17.) For the reasons set forth below, the Court will grant Plaintiffs' Motion to Withdraw Complaint (Doc. No. 17), but with prejudice, and will deny each of the Defendants' Motions to Dismiss (Doc. Nos. 10, 11, 12, 13) as moot.

## II.     BACKGROUND

On May 31, 2007, Plaintiffs executed a promissory note on a loan of $140,000 from MortgageIT, Inc. (Doc. No. 12-4; see Doc. No. 4 at 5.) The note was secured by a mortgage, which was recorded on June 12, 2007. (Id.) Under the terms of the mortgage, Plaintiffs agreed to convey the mortgaged property to MERS, the nominee for MortgageIT, granting it legal title to the property and the right of foreclosure. (Doc. No. 12-4 at 4.) The mortgage also specifies that Plaintiffs were required to make payments on the loan when due and that failure to do so would constitute default, entitling the lender to demand "immediate payment in full of all sums secured by [the mortgage]" and to "foreclose [the mortgaged property] by judicial proceeding." (Id. at 6, 16.) The mortgage was later assigned to CitiMortgage on June 23, 2007. Orman v. MortgageIT, Civ. A. No. 11-3196, 2012 WL 1071219, at *2 (E.D. Pa. Mar. 30, 2012) ("Orman II").

On January 7, 2011, Plaintiffs filed a Complaint in this Court against CitiMortgage alleging violations of the Real Estate Settlement Procedure Act ("RESPA"), 12 U.S.C. § 2605, et seq., and the Truth in Lending Act ("TILA"), 15 U.S.C. § 1641, et seq., seeking a rescission of

the mortgage.  Orman v. MortgageIT, Civ. A. No. 11-00139 (E.D. Pa. filed Jan. 7, 2011) ("Orman I").  On May 16, 2011, Plaintiffs voluntarily dismissed their complaint pursuant to Fed. R. Civ. P. 41(a)(1) in that action after CitiMortgage filed a motion to dismiss.  Orman II, 2012 WL 1071219, at *2.  On the same day, Plaintiffs filed another action in this Court against CitiMortgage, raising the same allegations included in the first action.  Id.  Plaintiffs alleged that they had rescinded the mortgage under TILA and thus the mortgage was void.  Id.  The Court found that there was no rescission of the mortgage, and it accordingly granted CitiMortgage's motion to dismiss that case.[1]

Plaintiffs next brought suit in state court, seeking to quiet title.  Orman v. MortgageIT, No. 2012-04352-RC (Pa. Ct. Cm. Pl. filed Mar. 30, 2012) ("Quiet Title Action").  The court granted CitiMortgage's motion for summary judgment and dismissed the action on June 14, 2014.[2]  Id.  Following this decision, and because Plaintiffs were in default on the loan, CitiMortgage initiated a foreclosure action against Plaintiffs on January 26, 2015, which is currently pending in state court.  (Doc. No. 12-12.)

Plaintiffs then commenced the present action by filing their Complaint on June 18, 2015 ("Orman III").  (Doc. No. 1.)  On August 24, 2015, Plaintiffs filed an Amended Complaint. (Doc. No. 4.)  In the Amended Complaint, Plaintiffs allege various claims against Defendants for fraud and conspiracy, in violation of federal and state law, as well as claims of misrepresentation and intentional infliction of emotional distress.  (Id.)  The essence of Plaintiffs' claims is that the

---

[1] The present action is Plaintiffs' third suit brought before this Court.  Plaintiffs first brought Orman I on January 7, 2011, in which they voluntarily dismissed their claims pursuant to Federal Rule of Civil Procedure 41(a).  Plaintiffs next brought Orman II on May 16, 2011, which the Court dismissed.  Finally, Plaintiffs filed this action, Orman III, on June 18, 2015.

[2] The Pennsylvania Superior Court, on appeal, vacated judgment and remanded the case because the action should have been initially dismissed because Thomas Orman, a necessary party to the action, had not been joined.  Accordingly, the Court of Common Pleas dismissed the case on remand.  Id.

mortgage at issue was recorded as assigned in September 2012, not in June 2007 when the mortgage rights were actually assigned, and thus constitutes a forgery.  (Doc. No. 22 at 4-5.)  On September 8, 2015, the Powers Defendants and the Javardian Defendants filed separate Motions to Dismiss the Amended Complaint.  (Doc. Nos. 10, 11.)  On September 10, 2015, the CitiMortgage Defendants and the Ballard Defendants filed separate Motions to Dismiss the Amended Complaint.  (Doc. Nos. 12, 13.)

On September 29, 2015, Plaintiffs filed a Motion to Withdraw Complaint, without prejudice, asserting that "the causes of action are not yet 'ripe' for adjudication" but that they wish to "proceed at a later date . . . on some of the issues addressed after those causes of action are 'ripe' for adjudication."  (Doc. No. 17 at 2.)  The Ballard Defendants filed a Response in Opposition to Plaintiff's Motion to Withdraw Complaint, asserting that while they agree with Plaintiffs that the Amended Complaint should be dismissed, "any such dismissal must be with prejudice."  (Doc. No. 18 at 2.)  The CitiMortgage Defendants and Ballard Defendants, apparently on behalf of all Defendants, filed an additional Response in Opposition on November 4, 2015.  (Doc. No. 24.)

On October 7, 2016, a hearing was held on the Motions to Dismiss and the Motion to Withdraw Complaint.  On October 28, 2016, Plaintiffs filed a Reply to Defendant's Opposition to the Motion to Withdraw.  (Doc. No. 22.)  Plaintiffs filed another Reply on November 10, 2015. (Doc. No. 25.)

For the following reasons, the Court will grant Plaintiffs' Motion to Withdraw Complaint, but with prejudice, and it will deny Defendants' Motions as moot and dismiss this case.

**III.    ANALYSIS**

**A.  Plaintiffs' Amended Complaint Will Be Dismissed**

As an initial matter, the Amended Complaint will be dismissed.  Plaintiffs have filed a Motion to Withdraw Complaint which voluntarily dismisses their claims.  (Doc. No. 17.) Plaintiffs are permitted to take such action under Federal Rule of Civil Procedure 41(a):

> [T]he Plaintiff may dismiss an action without court order by filing . . . a notice of dismissal before the opposing party serves either an answer or a motion for summary judgment.

Plaintiffs filed their Motion to Withdraw Complaint before any Defendant has served an answer or a motion for summary judgment.[3]  Therefore, by right, Plaintiffs have properly filed their Motion pursuant to Rule 41(a), and thus their Amended Complaint will be dismissed.[4]

Consequently, the Court need not review the merits of Plaintiffs' claims, and all parties agree that their claims are not properly before the Court.  The Defendants filed separate Motions to Dismiss, each challenging the legal sufficiency of Plaintiffs' claims under Federal Rule of Civil Procedure 12(b)(6) and further asserting that the Court lacks subject matter jurisdiction over the claims pursuant to Federal Rule of Civil Procedure 12(b)(1).  (Doc. Nos. 10, 11, 12, 13.) Plaintiffs similarly acknowledge that their claims are not properly before the Court and must be withdrawn, conceding in their Motion to Withdraw that their "causes of action are not yet 'ripe'

---

[3] Defendants have served motions to dismiss in this case.  The Third Circuit has held that "because a motion to dismiss . . . is neither an answer nor a motion for summary judgment, its filing generally does not cut off a plaintiff's right to dismiss by notice [under Rule 41(a)(1)(A)]."  In re Bath and Kitchen Fixtures Antitrust Litig., 535 F.3d 161, 166 (3d Cir. 2008) (citing Manze v. State Farm Ins. Co., 817 F.2d 1062, 1066 (3d Cir. 1987)).

[4] Plaintiffs do not specifically invoke Rule 41(a) in their Motion to Withdraw Complaint. However, they do not refute Defendants' characterization of Plaintiffs' Motion as one made pursuant to Rule 41(a).  Furthermore, when a "pro se litigant . . . makes it clear that he is seeking an order dismissing the amended complaint . . . without prejudice, we read plaintiff's motion as a request pursuant to Rule 41(a)(1) of the Federal Rules of Civil Procedure." Radogna v. Ashland, Inc., No. Civ. A. 04-cv-2007, 2005 WL 736599, at *1 n.2 (E.D. Pa. Mar. 30, 2005).

for adjudication." (Doc. No. 17 at 2.) All parties recognize that Plaintiffs' claims are currently without merit and should not be litigated at this time. Because Plaintiffs have properly dismissed their claims pursuant to Rule 41(a), the Court summarily will dismiss them.

### B.  Plaintiffs' Amended Complaint Will Be Dismissed With Prejudice

Although the parties agree that the Court should not review the merits of Plaintiffs' claims and should dispose of them at this time, they disagree about whether these claims should be dismissed with or without prejudice.

Defendants argue that Plaintiffs' voluntary withdrawal of their Amended Complaint, permitted under Federal Rule of Civil Procedure 41(a)(1), is in fact Plaintiffs' second Rule 41(a)(1) dismissal of their claims. (Doc. No. 24 at 1.) Defendants note that Plaintiffs voluntarily dismissed their complaint in Orman I in May 2011, and they assert that the claims that Plaintiffs seek to voluntarily dismiss in this case are no different from those that were dismissed in Orman I. (Id.) Consequently, this is Plaintiffs' second voluntary dismissal of the same claims, and therefore these claims must be dismissed with prejudice under the Two Dismissal Rule, discussed below. (Id. at 2.)

Plaintiffs contend that the Two Dismissal Rule cannot apply to them, and the Court should allow them to voluntarily dismiss their Amended Complaint without prejudice. (Doc. No. 22 at 3.) Plaintiffs first argue that because Leslie Orman was never a party to Orman I, she did not voluntarily dismiss any claims against Defendants and thus the Two Dismissal Rule is inapplicable to this case. (Id. at 2-3.) Plaintiffs also insist that the claims raised in this case are entirely separate from those raised in Orman I, as the causes of action in this case arose after the conclusion of both Orman I and Orman II. (Id.; Doc. 25 at 3.) Therefore, Plaintiffs argue that they are entitled to voluntarily dismiss their Amended Complaint without prejudice so that

Plaintiffs may proceed with their claims at a later date when those claims are ripe for adjudication.  (Doc. No. 25 at 9.)

The Court finds Plaintiffs' arguments unpersuasive.  The Court will first address the application of the Two Dismissal Rule, and then review Plaintiffs' contentions that it should not apply in this case.

### 1.   Application of the Two Dismissal Rule

As noted, Federal Rule of Civil Procedure 41(a)(1)(A) permits a plaintiff to dismiss an action without court approval by filing a notice of dismissal.  The notice must be filed before any opposing party serves either an answer or a motion for summary judgment.  Id.  Such a dismissal is made without prejudice.  Fed. R. Civ. P. 41(a)(1)(B).

However, Rule 41 further provides that:

[I]f the plaintiff previously dismissed any federal- or state-court action based on or including the same claim, a notice of dismissal operates as an adjudication on the merits.

Id.  This caveat included in Rule 41(a) is known as the Two Dismissal Rule, which provides that a plaintiff only has "the right to take one such dismissal without prejudice."  Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 397 (1990).  "[I]f the plaintiff [voluntarily dismisses pursuant to] Rule 41(a)(1) a second time for an action based on or including the same claim, the action must be dismissed with prejudice."  Id. at 394.  Furthermore, application of the Two Dismissal Rule is not discretionary, and it must be strictly construed.  Manze, 817 F.2d at 1066.  Thus, under Rule 41 and its Two Dismissal Rule, a plaintiff has the benefit of voluntarily dismissing his claims against a defendant without prejudice only once; any subsequent voluntarily dismissal of those claims will bar the plaintiff from bringing them again.

### 2. The Two Dismissal Rule Applies Even Though the Parties in <u>Orman I</u> Are Not Identical to the Parties in This Case

Plaintiffs aver that the Two Dismissal Rule should not apply to this case because "[t]he first action filed in this Court [was] dismissed by Plaintiff Thomas Orman as Leslie Orman was not a party to the action." (Doc. No. 22 at 3, 24 (citing <u>Orman I</u>).) According to Plaintiffs, the Two Dismissal Rule is inapplicable because the identities of Plaintiffs in both voluntarily dismissed actions are dissimilar. Plaintiffs' argument is incorrect.

When applied, the Two Dismissal Rule has a claim-preclusive effect in the same federal court in which the case was previously dismissed by the plaintiff. See <u>Semtek Int'l v. Lockheed Martin Corp.</u>, 531 U.S. 479, 501, 505-06 (2001) (explaining that the two-dismissal limitation in Rule 41(a)(1) is "the opposite of a dismissal without prejudice," and thus bars bringing anew the same claim in the same court). Rule 41(a)'s claim-preclusive effect proscribes the filing of an additional suit based on the same previous cause of action "involving the same parties or their privies." <u>Id.</u> at 502 (citing <u>Parklane Hosiery Co. v. Shore</u>, 439 U.S. 322, 326 (1979)). That is, because of the claim-preclusive effect, application of the Two Dismissal Rule is not limited to circumstances in which the plaintiff voluntarily dismissing the second suit is identical to the plaintiff dismissing the first suit; it is enough that the plaintiffs in both actions are in privity with one another to be within the scope of the Two Dismissal Rule. See <u>St. Clair Intellectual Prop. Consultants, Inc. v. Samsung Elecs. Co., Ltd.</u>, 291 F.R.D. 75, 78 (D. Del. 2013) (establishing that privity, or at least "some degree of relationship," between the parties in successive actions falls under the purview of Rule 41(a)).

When evaluating the parameters of this claim-preclusive effect, "privity has traditionally been understood as referring to the existence of a substantive legal relationship . . . from which it was deemed appropriate to bind one [party] to the results of the other party's participation in

8

litigation." <u>Nationwide Mut. Fire Ins. Co. v. George V. Hamilton, Inc.</u>, 571 F.3d 299, 310-11 (3d Cir. 2009). Relevant to the present case, "[p]rivity [of parties] is defined as a mutual or successive relationship to the same rights of property . . . or such an identification of interest of one person with another as to represent the same legal right." <u>Greenway Center, Inc. v. Essex Ins. Co.</u>, 475 F.3d 139, 149 (3d Cir. 2007) (citations omitted).

Here, Plaintiffs are co-owners of the property at issue and are co-borrowers on the note and mortgage. (<u>See</u> Doc. No. 12-4.) Because they have the same "rights of property" as they relate to the mortgaged property at issue in <u>Orman I</u> and in this case, Leslie and Thomas Orman are in privity with each other for the purposes of the Two Dismissal Rule. Therefore, the fact that Leslie Orman was not a plaintiff in <u>Orman I</u> does not preclude the application of the Two Dismissal Rule: her property interests were the same as those of Thomas Orman, who voluntarily dismissed their claims on both of their behalves. The present voluntary dismissal is therefore Plaintiffs' second dismissal of their claims pursuant to Rule 41(a)(1) and accordingly will be dismissed with prejudice.

### 3. The Two Dismissal Rule Applies Because Claims Presently Being Dismissed Are Based on Claims Previously Dismissed in <u>Orman I</u>

Plaintiffs next argue that the Two Dismissal Rule cannot apply to their present Rule 41(a) dismissal because the claims they seek to voluntarily dismiss have never been dismissed before. (Doc. No. 22 at 2.) Plaintiffs maintain that the claims here "are not claims previously made," as these claims allege violations of different statutes and laws, and thus comprise distinct causes of action from those brought in <u>Orman I</u>. (<u>Id.</u>) Plaintiffs insist that the FDCPA, PFDCPA, RICO, PaCO, and "dilatory litigation practice" claims brought against Defendants "in this action are not based on the same allegations" surrounding the TILA and RESPA claims that were dismissed in the previous action. (<u>Id.</u> at 2-3.) Because the present claims arose "from occurrences AFTER"

the previous action ended—specifically, an allegedly fraudulent recording of a forged Assignment of Mortgage in September 2012—Plaintiffs assert that these claims "could NOT have been incorporated into previous actions."  (Id. at 3 (emphasis in original).)

Defendants disagree, maintaining that the current action is "premised upon the very same allegations underlying [Orman I]."  (Doc. No. 18 at 2.)  Defendants stress that the previous action was "based on the allegations that 'there is a question in this mortgage as to who exactly is the owner of the note and mortgage'" and that the present action is "based on the same set of allegations . . . [namely,] CitiMortgage's right to enforce the Mortgage, and [] requests the same relief."  (Id. at 3-5 (quoting Plaintiff's Orman I Verified First Amended Complaint, Doc. No. 18-2 at 23).)  Because both actions are based on the same underlying claim that "CitiMortgage lacks standing to enforce the Mortgage," Defendants argue that the Two Dismissal Rule must apply and that Plaintiffs claims should be dismissed with prejudice.  (Doc. No. 24 at 1.)

Finding that Plaintiffs present the same claims within the meaning of Rule 41(a), the Court agrees with Defendants and will apply the Two Dismissal Rule.

### a.  Same Claims Analysis Under Rule 41(a)

Once its claims are dismissed for the second time pursuant to Rule 41(a), a plaintiff will be barred from bringing a successive action that is "based on or including the same claim" that was previously dismissed.  Obviously, a critical question for a court to answer in applying the Two Dismissal Rule is: are the claims that the plaintiff seeks to voluntarily dismiss the same as those dismissed in a previous action?  However, there is little authority that instructs a court on how to determine if the plaintiff is in fact bringing the same claims within the meaning of Rule 41(a).

A natural starting point in this inquiry, though, is to apply the "same claims" analysis provided in res judicata jurisprudence.  As noted above, the Two Dismissal Rule operates to give claim-preclusive effect to claims previously dismissed by a plaintiff within the same federal court in which similar claims were previously dismissed. <u>Semtek Int'l</u>, 531 U.S. at 501, 505-06; <u>see also</u> <u>Hammond v. J.C. Penney Co.</u>, No. Civ. A. 97-1240, 1998 WL 42285, at *1 (E.D. Pa. Jan. 9, 1998) ("Once the Rule is triggered, the claims asserted in the complaint at issue are res judicata.").   Therefore, a court ought to begin its evaluation of whether a plaintiff is bringing the same claims for the purposes of Rule 41(a) under a res judicata analysis.

 The doctrine of res judicata, or claim preclusion, "bars repetitious suits involving the same cause of action" once there has been "judgment on the merits."   <u>United States v. Tohono O'Odham Nation</u>, 563 U.S. 307, 315 (2011) (quotations omitted).  The "test in preclusion law for determining whether two suits involve the same claim or cause of action depends on factual overlap." <u>Id.</u> at 316.  The Third Circuit has cautioned, however, that "the term 'cause of action' cannot be precisely defined, nor can a simple test be cited for use in determining what constitutes a cause of action for res judicata purposes." <u>United States v. Athlone Indus., Inc.</u>, 746 F.2d 977, 983 (3d Cir. 1984).  Instead of focusing on a rigid application of a test to determine if two claims are the same, a court must keep in mind "the policies underlying claim preclusion are the prevention of harassment of defendants and promotion of juridical economy."   <u>Bradley v. Pittsburgh Bd. of Educ.</u>, 913 F.2d 1064, 1073 (3d Cir. 1990).  Accordingly, a court should consider "underlying events giving rise to the various legal claims" while still "taking a broad view of what constitutes identity of causes of action," focusing instead on their "essential similarity." <u>Id.</u> at 984.

In the context of the Two Dismissal Rule, a court should balance these res judicata principles with the fundamental purpose of Rule 41(a).  The United States Supreme Court explained that "Rule 41(a)(1) was intended to eliminate the annoying of a defendant by being summoned into court in successive actions and then, if no settlement is arrived at, requiring him to permit the action to be dismissed and another one commenced at leisure."  Cooter & Gell, 496 U.S. at 397 (quotations omitted).  Rule 41(a)(1) is "aimed at curbing abuses of the judicial system" by preventing a serial plaintiff from harassing a defendant through successive and vexatious litigation.  See id. at 398.  "The general purpose of voluntary dismissal under [Rule 41(a)] is to permit the plaintiff to take a voluntary nonsuit and start over so long as the defendant is not prejudiced" by, for example, "excessive and duplicative expenses" in litigation or wasted "effort and expense in preparing for trial."  Total Containment, Inc. v. Aveda Mfg. Corp., Civ. A. No. 90-4788, 1990 WL 290146, at *2 (E.D. Pa. Dec. 7, 1990).  Rule 41(a), therefore, has dual purposes:  it is meant to both confer a right upon the plaintiff to voluntarily dismiss his claims without court approval, while it simultaneously protects the defendant from harassment of successive litigation through the application of its Two Dismissal Rule.  See Cooter & Gell, 496 U.S. at 397-98.

In uniting the principles of res judicata with the spirit and purpose of Rule 41(a), it reasons that a court should review the "essential similarity" of a plaintiff's successive claims to ensure that their effect does not harass the defendant by inundating it with duplicative litigation. While a court probably should evaluate the "factual overlap" of the claims, see Tohono O'Odham Nation, 563 U.S. at 315, a court may also assess the essential similarity of the relief sought by the plaintiff in both actions.  This analytical approach is not only logical in the context of Rule 41(a) given the Rule's purpose, but it is also encouraged under res judicata

jurisprudence.  See, e.g., McMillian v. Trans World Airlines Inc., 331 F. App'x 103, 104 (3d Cir. 2009) (a successive action asserts the same claim of a previous action for the purposes of preclusion where those actions request the same relief);  Tara M. v. City of Phila., No. CIV. A. 97-1041, 1998 WL 464910, at *2 (E.D. Pa. Aug. 6, 1998) (describing actions as duplicative if "the same rights [are] asserted and the same relief [is] prayed for . . . and the essential basis of relief sought [is] the same");  Germantown Seventh-Day Adventist Church v. City of Phila., Civ. A. No. 94-6344, 1994 WL 719482, at *2 (E.D. Pa. Dec. 20, 1994) (actions that "seek the same relief" through "different legal theories" do not "state different causes of action").  Accordingly, successive claims may be the same under Rule 41(a) if their essence is to secure the same relief, albeit through different legal theories.

### b.  Plaintiffs Present the Same Claims as in Orman I

In this case, Plaintiffs' claims stem entirely from their continued belief that CitiMortgage has no authority to enforce the Mortgage and has no standing to foreclose.  In Orman I, Plaintiffs' claims were brought to make "void and extinguished" any "claims/security interest[s]" that CitiMortgage purported to hold—specifically, the right to enforce the Mortgage—because, as Plaintiffs alleged, "there is a question in this mortgage as to who exactly is the owner" and thus possesses the right to enforce it.  (Doc. No. 18-2 at 21, 23.)  Orman I was based on claims to have "Defendants . . . be forever enjoined from asserting any estate, right, title or interest in the subject property adverse" to Plaintiffs through a Court order that Defendants could not enforce the Mortgage.  (Id. at 24.)

Plaintiffs do not explain how the gravamen of the claim raised in the present action is not the same as that in Orman I.  Here, Plaintiffs state, "If CitiMortgage had any right to enforce the Mortgage, Plaintiffs question why CitiMortgage would create and record a forged Assignment of

Mortgage." (Doc. No. 22 at 4.) Despite Plaintiffs' contentions, they bring the present action based on the same claim that CitiMortgage does not have "any right to enforce the Mortgage." It is obvious that Plaintiffs bring the present action to assert once again their claim that CitiMortgage has no right to foreclose on the subject property. The Court further notes that this action is brought at the same time that a suit is pending in state court in which CitiMortgage is attempting to enforce the Mortgage and execute foreclosure.

The claims on which this action and <u>Orman I</u> are based are akin. The legal theories have changed, but the crux of these allegations has not: both sets of alleged violations of law are rooted in the same claim that CitiMortgage has no standing to enforce the Mortgage and no authority to foreclose on the property. Both actions seek the same outcome and relief—enjoining CitiMortgage from foreclosing on the property. Because this claim is being voluntarily dismissed by Plaintiffs pursuant to Rule 41(a)(1) for the second time, it will be dismissed with prejudice under the Two Dismissal Rule.

### 4. Plaintiffs May Not Withdraw Their Motion to Withdraw Complaint

Plaintiffs request that, should the Court find that the Two Dismissal Rule is applicable to this case, they be permitted to withdraw their Motion to Withdraw Complaint, thereby preserving their claims for adjudication at a later time. (Doc. No. 22 at 24-25.) Although the Court has determined that the Two Dismissal Rule does apply to this case, the Court will not permit Plaintiffs to withdraw their Motion.

Federal Rule of Civil Procedure 11(b) states that:

> By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief . . . the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law . . .

The Advisory Committee Note to Rule 11 further describes a party's duties under this Rule:

> A litigant's obligations with respect to the contents of these papers are not measured solely as of the time they are filed with or submitted to the court, but include reaffirming to the court and advocating positions contained in those pleadings and motions after learning that they cease to have merit.

Fed. R. Civ. P. 11(b) Advisory Committee's Note to 1993 Amendment.  Rule 11, therefore, prohibits a party from knowingly pursuing a claim that is without merit.  To do so will expose that party to the risk of having sanctions imposed upon it.  Fed. R. Civ. P. 11(c).

Here, Plaintiffs have repeatedly acknowledged to the Court that their claims are not yet "'ripe' for adjudication on the merits."  (Doc. No. 22 at 24; Doc. No. 18 at 2; Doc. No. 25 at 9.) By their own admission, Plaintiffs concede that the claims they have set forth in the Amended Complaint are without merit, which is precisely why they have moved to voluntarily dismiss those claims pursuant to Rule 41(a).  (Doc. No. 17.)  Therefore, to seek vacatur of their Rule 41(a) dismissal would be to continue "advocating" claims that, to the "best of [Plaintiffs'] knowledge," are not "warranted by existing law."  The Court will not permit Plaintiffs to knowingly violate Rule 11 and, for their benefit, will prevent them from engaging in such sanctionable behavior.  Therefore, Plaintiffs may not withdraw their Motion to Withdraw Complaint.

## IV.     CONCLUSION

For the foregoing reasons, Plaintiffs' Motion to Withdraw Complaint is granted, and their Amended Complaint will be dismissed with prejudice.  Defendants' Motions to Dismiss will be denied as moot.  An appropriate Order follows.